## PORTSMOUTH GAS LIGHT CO. *v.* SHANAHAN.

The charter of a gas-light company gave them the right to lay pipes in the streets of a city, the consent of the city authorities being first obtained; and such consent having been obtained, pipes were laid accordingly. Afterwards, in building a sewer in one of the streets, due care being used not to injure the pipes, they were necessarily uncovered, and injured to some extent, whereby the company suffered damage. *Held,* that neither the city, nor its contractor doing the work, was liable for the damage.

CASE, for injuries to the plaintiffs' gas pipes, caused by the defendant's negligence in constructing a sewer, with a count in trespass for the same injuries.

The plaintiffs are a corporation authorized " to lay gas pipes in any of the public streets or highways in the city of Portsmouth, the consent of the authorities of said city having first been therefor obtained, and to relay and repair the same, subject to such regulations as to the health and safety of the citizens and the security of the public travel as may be prescribed by the authorities aforesaid," and prior to 1885, with the consent of the city council, laid the pipes in question. In 1885 the city contracted with the defendant to build a sewer through Deer street. The defendant executed the work with due care to prevent injury to the plaintiff's pipes, and to avoid uncovering or undermining them. It was necessary to use explosives in blasting ledges, and by their use some pipes were broken and the gas escaped. It was also necessary from time to time to uncover, expose, and undermine the pipes. The plaintiffs seek to recover the damages caused by breaking the pipes and by the escape of gas, and also for the expense of removing exposed pipes, which would otherwise have been broken, and of establishing temporary lines of surface pipe for the supply of their customers.

*C. Page*, for the plaintiffs. The plaintiffs had authority from the legislature to lay their pipes through the streets of the city of Portsmouth, subject to the consent of the authorities of the city. This consent, without any restriction, qualification, or reservation as to the right of the city ever to interfere with the pipes, was duly obtained in 1851, and the pipes were thereupon laid. They remained undisturbed for over thirty years, until this defendant dug them up and interrupted the plaintiffs' use of them, and caused the plaintiffs damage to the amount of $779.38, as found by the referee.

The defence is, that the defendant was a contractor, building a sewer for the city, which an engineer in the employ of the city had located on a line near the plaintiffs' pipes, and in building the sewer on this line the defendant was necessarily obliged to cause this damage. The mode of laying out and building a public sewer and assessing damages to persons damaged is fixed by statute, but no attempt was made to follow it in this case. G. L., c. 78, ss. 6, 13. The mayor and aldermen are the tribunal to decide upon the necessity for a sewer, and are authorized to build it. The city council have nothing to do with it. Here the city council passed a vote to build a sewer. The aldermen gave no notice, and did not attempt to assess anybody's damages.

The defendant's claim is, that he, under his contract with the city, had the right in building this sewer to dig up and destroy the plaintiffs' pipes wherever he found it reasonable or necessary

so to do, without making any compensation therefor whatever, the result being described by "that most unsatisfactory of all legal phrases, *damnum absque injuria.*" This broad claim I cannot find to be justified by any decision or opinion of any court, and the defendant in his brief fails to cite any such case. It is grossly unjust and unreasonable, and contrary to the principle—than which none is more salutary—that private property cannot be taken for private uses without the owner's consent, nor for public uses without compensation. In this regard the supreme power of the state is powerless against the humblest individual. This claim must carry with it the necessary proposition, that though the plaintiffs owned their pipes before they were laid under the street, yet when they had been laid there with the full consent of the city, they became in some way forfeited to the city, or the city obtained the right to them, whenever it chose to undertake a public work that might require their removal or any interference with them, though this work had no connection with the keeping of the street in repair for public travel. It follows, that if it was deemed by the city necessary or proper to remove the pipes altogether, it could do so, and utterly destroy the plaintiffs' business without compensation. It even follows that if the plaintiffs are bound to remove their pipes whenever the city requires, they may be removed by the city, and the plaintiffs may be compelled to pay to the city the cost of such removal in addition to having their business utterly ruined. Nobody denies the right of the city to abate a nuisance, if the plaintiffs' pipes become one; and nobody denies the liability of the plaintiffs for obstructing public travel in the streets, if they should allow their pipes to make such obstruction. We simply claim that so long as the plaintiffs' pipes are properly kept and maintained, and do not obstruct or interfere with public travel, nobody can disturb them without compensation. If our claim is not the correct one, then the plaintiffs' property is of very little value, and its tenure of existence very precarious.

I. We do not suppose it can be denied that the plaintiffs had some right of property in the line of pipes destroyed. *Eaton* v. *Railroad*, 51 N. H. 504, 511–515, and cases cited. There is no occasion to cite authorities to the point that this property, whether corporeal or incorporeal, could be taken only by the exercise of the right of eminent domain. Bill of Rights, *art.* 12.

*Chicago & N. W. R. Co.* v. *Jefferson*, 14 Brad. 615, was a case similar to ours, where the plaintiffs' railroad had been laid in the streets under authority from the legislature, and the defendants undertook to dig under the track and disturb the same in building a sewer. The court promptly enjoined the defendants, and said,— " This easement is a property right, and it is as much protected from unlawful invasion as any other property, nor can it be taken or damaged for public use without just compensation." And when the attempt is made to take property, by whatever name called,

under this right, the forms of law prescribed by the legislature must be strictly observed, and the burden is on the defendant to show such observance, which he has not attempted to do. *Cate* v. *Cate*, 44 N. H. 212. The city had no more right to disturb the plaintiffs' pipes in order to build a sewer, by vote of the city council, than any private individual or corporation had.

But we go further, and confidently assert that the city could not invade the plaintiffs' rights in any possible way, in order to build a sewer, without due compensation for such invasion. " The building of a sewer is outside of and foreign to the proper uses of a highway as such," though it may be lawful to build the sewer. *C. & N. W. R. Co.* v. *Jefferson, supra.* "It is a use, legitimate enough in itself, but still a use not implied from the laying out of the street." *Shawneetown* v. *Mason*, 82 Ill. 337.

A corporation has no more legal rights to injure an individual than a private person has. " If an individual, exercising his lawful powers, commit an injury, the action on the case is a familiar remedy ; if corporations, acting within the scope of their authority, should work wrong to another, the same principle of ethics demands of them to repair it, and no reason occurs to the court why the same remedy should not be applied to compel justice from them." *Rhodes* v. *Cleveland*, 10 Ohio 159; *McCombs* v. *Akron*, 16 Ohio 475.

In *Baron* v. *Baltimore*, 2 Am. Jur. 203, it is said,—" The defendants are trustees for the public interest for their own benefit, and ought to answer as an individual to the person at whose expense they are benefited." *Lawrence*, J., in *Nevins* v. *Peoria*, 41 Ill. 502, 508–512, said,—" We can solve more easily and safely questions of this character if we take pains to free our minds from the false notion that a municipality has some indefinable element of sovereign power, which takes from the property of the citizen, as against its aggressions, the protection enjoyed against the aggressions of a natural person. . . . The same law that protects my right of property against invasion by private individuals, must protect it from similar aggression on the part of municipal corporations. . . . It is undoubtedly important that our cities should improve rapidly, and be able to carry onward large systems of drainage and grading, but in the attainment of these ends they cannot be permitted to sacrifice the property of the humblest citizen without compensation. . . . A city, in the management of corporate property, must be held to the same responsibilities that attach to individuals for injury to the property of others." There is no similarity between our claim for compensation and that of an owner of land adjacent to the street for damages arising from a public use of the street other than travel. His right to compensation might be denied because compensation had been once made for his land and the servitude to which it had been subjected.

II. The legislature possesses a control over public highways paramount to that of towns. It had the power to give the plaintiffs the right to lay pipes in the streets of Portsmouth regardless of the consent of the city. In this case, the legislature saw fit to make the grant subject to the consent of the city, but imposed no other restriction upon it; and in giving this consent the city did not alter or impair the plaintiffs' grant, and did not attempt to do so. The legislature represents the public—all the people of the state—and it has the right to obstruct or prevent public travel upon the street, or discontinue the same, if in its opinion it is for the general welfare; and nobody can prevent it. *People* v. *Walsh*, 96 Ill. 232; *Fox* v. *Kendall*, 97 Ill. 72; *State* v. *Hampton*, 2 N. H. 22; *Dover* v. *Portsmouth Bridge*, 17 N. H. 200; *Wales* v. *Stetson*, 2 Mass. 146.

The plaintiffs then hold the right (whether granted wisely or unwisely being immaterial) to lay and maintain their pipes, from a power superior to the city or anybody else; and it follows, that so long as these pipes are kept and maintained in a lawful and proper manner, and are not unsafe or injurious to the public, nobody but that same power can lawfully take away or disturb this right; and there is no claim in this case that the pipes were not kept and maintained in a proper manner. It suits the defendant's argument in his brief to pervert the facts by talking about the privilege granted by the city "with the consent of the legislature." But the fact remains that the legislature granted the privilege, attaching to it a condition—not necessarily attached—that the city consent. If this consent had been a qualified one, conditioned that the city should have such rights of interference or disturbance as should be deemed necessary, a different case would be presented. But no condition or qualification was attached to the consent, and the law attaches none.

In the case of the *Louisville City Railway Co.* v. *Louisville*, 8 Bush 415, referred to in the defendant's brief, the legislative grant expressly required the city to regulate and control the tracks of the company; and when the city assented to the laying of the tracks, the duties imposed upon it in the act of the legislature were in very express and particular terms reserved to it. The court uses the following language in that case: "The act which, by the terms of the charter of the railway company, is made to control and limit the power of the general council to contract with that corporation, requires such council to reserve the right to regulate and control the railroad laid."

In the case at bar, the right given the plaintiffs by the legislature to lay its pipes does not interfere with the rights of the public to use the street for travel—the purpose for which it was laid out. For purposes other than keeping them suitable for travel the city has no more rights in the streets than any other person has, unless these rights are given to it by the legislature. The legislature has

given no other rights, and, in this grant, imposed upon the city no duty save simply to consent or to refuse consent to the laying of the pipes. We do not claim, as the defendant seems to hope we should, that the city could give the right to us to obstruct travel in the streets, or could release its rights to keep the streets in repair for travel. We do claim, however, that the legislature could give us that right. It did give us certain rights, and those rights are all that we claim to have.

III. The plaintiffs having laid their pipes with the unqualified consent of the city, and having expended large sums of money thereon, have an easement as against the city which cannot be disturbed without compensation. 1 Add. Torts 186, and cases cited; *Woodbury* v. *Parshley*, 7 N. H. 237. It may well be that the plaintiffs would never have laid their pipes had the consent been qualified with such a reservation in favor of the city as is claimed by it, or had been laden with such a burden as the defendant attempts to impose. Indeed, it is probable that the pipes would never have been laid in such case. No corporation could afford to lay them. No question arises as to the right of the public to use the streets for travel, nor as to the right of the city to keep the streets in repair for such travel. The city did not attempt to give away these rights, and could not have done so. It may even be that the city could not, as against itself, give any other right or easement in the highway that would not be subject to such disturbance as the city should be compelled by law to make, even to the building of a sewer. But in this case the city voluntarily, on its own motion, for its own accommodation, and without legal compulsion, built a sewer, and in order to save expense used the street as the place for its location, and that part of the street where it knew the plaintiffs' pipes were laid. *Towle* v. *Railroad*, 17 N. H. 519, 523. The agreement of the city to consent, and the laying of the pipes by the plaintiffs thereunder, for the benefit of all the citizens and the public as well as the municipality itself, resulted in an executed contract, binding thereafter upon the city, and estopping it from doing what it now claims the right to do.

*Frink & Batchelder*, for the defendant. The city voted to build the sewer, and located it. It was a city enterprise, and one which the city had not only the legal right to undertake and consummate, but one that was incumbent upon it if the public convenience or the preservation of the public health required its construction. G. L., *c*. 78, *s*. 6. The construction of the sewer through the streets of the city was a lawful use of the public street, independent of statute. *Traphagen* v. *Jersey City*, 29 N. J. Eq. 206; *Stoudinger* v. *Newark*, 28 N. J. Eq. 187; Ang. High., 3d ed., *p*. 93, *note*.

The authority conferred upon the officers of the city to determine where the sewer should be built was a judicial power involving the exercise of a large discretion, and considerations affecting

the public health and general convenience.  *Murphy* v. *Lowell*, 128 Mass. 397.   Thus we have two propositions to start with:

(1) It was the right and duty of the city to construct a public sewer, if the public convenience or health demanded.

(2) The municipal authorities, in the location of the sewer, acted in a *quasi* judicial character.

Although the defendant was an independent contractor, yet, so far as the construction of the sewer upon the route located by the city was concerned, he acted under the authority of the city, and had the same rights and protection as the city itself would have had if it had performed the labor by its own immediate workmen.

The plaintiffs' contention is, that notwithstanding the general power of the city to construct a sewer in such localities as it may deem judicious, yet by reason of the authority granted the plaintiffs by the city, with the consent of the legislature, to lay its pipes under the streets, it acquired an easement in the streets that cannot be disturbed without compensation, nor destroyed.   The answer is obvious,—that this easement was a qualified one, subject to any lawful and reasonable use of the street by the city for the public good; or, if the plaintiff company had an easement in the street, it can stand no better in the law than an individual owner of property who receives injury in the reasonable use of the highway by a municipality for a public improvement within the purposes to which the street was dedicated.

For the purposes of the argument, we may concede that the city, with the consent of the legislature, could grant to the Gas Company authority to lay its pipes in the public streets ; and whatever might be its effect on the adjoining land-owner, it bound the city within the legal limitations of the grant.   But none the less the grantee must have taken the privilege with its reasonable burdens, and the grant is to receive a reasonable construction according to the situation of the parties and their relative relations and rights.   The Gas Company is a private corporation.   The city holds its interests in the public streets for a public use.   Any private use of the streets must be subordinate to the public rights. Thus, it would hardly be contended that the city could license a private corporation to erect structures or lay pipes in its streets so as to interrupt public travel, or that it could release its rights to disturb such structures or pipes if repairs upon the highway, necessary to render it suitable for travel, demanded it.   It is just as lawful a use of the highway, if the public convenience or the preservation of the public health demands it, to lay a sewer through it as to grade it for travel.   The street was laid out for the public use.   The municipality has the power to exercise certain authority over the street for the public good, but it can do nothing to abridge the rights of the public in the street.

The legislature did not attempt to confer any rights upon the plaintiffs without the consent of the city, or to abridge the control

of the latter over its streets. The legislative authority to lay their pipes in the streets was merely a consent on the part of the legislature to such use of the streets. If the plaintiffs' contention is the correct one, then the city granted to the plaintiffs a perpetual right in the street. It abdicated its power to repair the street, to change the grade if it became necessary to accommodate the public travel, to remove ledges therein, or do any other act in the street however necessary for the accommodation of the public, if it interfered with the plaintiffs' pipes.

Our construction is, that the plaintiffs have the liberty to lay their pipes in the street, subject to the right of the city to disturb them, in a reasonable manner, in the reasonable discharge of any of its legal powers or obligations for the public good, within the uses for which it holds the streets. These respective rights are to be reasonably enjoyed;—neither party can destroy, or unreasonably or unnecessarily impair, the rights and privileges of the other. *Wharf Co.* v. *Portland*, 67 Me. 46. The disturbance of the plaintiffs' right was necessary in the exercise of the defendant's public duties, and was but temporary. "The state and the city councils, or their agents, had full power over the highways of the city to improve them for the uses for which they were made highways, and the construction of the sewer under the general statutes was an exercise of that power." *Transportation Co.* v. *Chicago*, 99 U. S. 640.

The statute imposes on the city the obligation to keep its streets in repair, and the law imposes a liability upon the city by reason of any injury arising from its negligence to keep its sewers in proper condition. *Rowe* v. *Portsmouth*, 56 N. H. 291. If the plaintiffs' contention that it has an easement which protects its pipes from disturbance is correct, then it follows that in case the road-bed or sewer drains should ever need repairing the city could not put them in order to the disturbance of the plaintiffs' works. So the conclusion would follow, that the city, without compensation, has abdicated its right to occupy the street for necessary and reasonable public purposes to the Gas Company. The Gas Company, without compensation, has received from the city an unlimited and an irrevocable grant of an easement, for the necessary and reasonable disturbance of which it can demand compensation from the city. The case of *L. C. Ry. Co.* v. *Louisville*, 8 Bush 415–423, is very like the one under consideration. In that case the legislature authorized the L. C. Ry. Co. to lay its tracks through the streets of Louisville, subject to the selection by the city of the streets in which the tracks were to be laid, and the regulation of the mode, etc., of placing them. The city granted authority to the company to lay its tracks in the streets and in the manner they were laid. The city, desiring to make some improvements in a certain street, notified the company to remove its tracks for the time being, which the company declined to do. The ques-

tions determined were, whether the company should remove its tracks to enable the city to execute its work upon the streets, and whether it was entitled to compensation for the disturbance of its tracks. The court held that the company took its privilege of laying its tracks in the streets, subject to the reasonable use thereof by the city for the purposes to which they were dedicated, and hence was entitled to no compensation. See, also, *Appeal of N. B. & M. R. R. Co.*, 32 Cal. 499.

*Milhau* v. *Sharp*, 27 N. Y. 611 (*S. C.*, 84 Am. Dec. 314), differs from the case at bar in this,—that the common council, without any legislative authority, attempted to grant to Jacob Sharp the right to construct a railway through Broadway; but the language of the court is instructive: "The resolution is void because it vests in the defendant an exclusive interest in the street which the common council had no power to convey, and to divest the corporation of the exclusive control over the street, which has been given to it as a trust for the benefit of the public, and which it is not authorized to relinquish." If, instead of an attempted grant amounting to an easement in the soil of the street of the city, subject only to the reasonable use of the street for the purposes to which it was dedicated, it should be contended that the liberty of laying its pipes in the streets was a license conveying no freehold interest in the streets, but irrevocable because executed, then it is only another way of putting the defendant's proposition to say that the license was revocable to the extent that the reasonable use of the streets should demand such a revocation. The licensees must have understood that they took their rights to lay their pipes subject to any lawful and reasonable use of the streets by the city. In the present emergency there was required only a temporary disturbance of the plaintiffs' works; and to that extent the license was revocable upon notice, and the city had no power to grant a license not subject to such a revocation. *National Water-Works Co.* v. *City of Kansas*, 28 Fed. Rep. 921, is exactly in point.

CARPENTER, J. The city had authority to construct the sewer. G. L., c. 48, s. 8, c. 78, s. 6. If the plaintiffs have any interest or easement in the soil of the city streets, no part of it was taken for the sewer. They have now the same unimpaired right or interest which they had before the sewer was constructed. No damages could have been awarded the plaintiffs for a taking of their property under the law of eminent domain (G. L., c. 48, s. 8, c. 78, s. 13), if all that happened in the process of building the sewer had been foreseen. *Kennett's Pet.*, 24 N. H. 139; *Pet. of Mt. Washington Road Co.*, 35 N. H. 134; *Eaton* v. *B. C. & M. R. R.*, 51 N. H. 504; *Thompson* v. *Androscoggin Co.*, 54 N. H. 545. The right of the city to build the sewer was at least equal to that of the plaintiffs to maintain their gas pipes in the street. Assuming that their rights were equal, each was bound so to exercise his

right as not unnecessarily, unreasonably, or negligently to interfere with the other's right, and would not be liable in damages so long as he did so. *National Water-Works Co.* v. *City of Kansas*, 28 Fed. Rep. 921. It is found that the use of explosives, and the uncovering, exposure, and undermining of the plaintiffs' pipes, by the defendant, were necessary; in other words, that the sewer could not otherwise be constructed. The defendant was the city's servant or agent. In building the sewer, he could lawfully do whatever the city could do. He was authorized to do what was necessary to be done in the construction of the sewer. He did nothing more, and he exercised ordinary care to prevent injury to the plaintiffs. He was not in fault, and is not liable. *Brown* v. *Collins*, 53 N. H. 442; *Lyons* v. *Child*, 61 N. H. 72; *Holmes* v. *Mather*, L. R. 10 Exch. 261, 268, 269. A householder, whose dwelling was destroyed or injured, or who was personally wounded by rocks blasted from the sewer by the defendant, could not recover damages, unless the blasting, being in itself lawful, was negligently done—unless the defendant by ordinary care could have prevented the injury. *Nashua Iron Co.* v. *W. & N. Railroad*, 62 N. H. 159.

*Judgment for the defendant.*

BLODGETT, J., did not sit: the others concurred.