[No. 21422. Department One. April 11, 1929.]

PACIFIC TELEPHONE AND TELEGRAPH COMPANY, *Respondent*, v. W. F. SLEZAK *et al.*, *Appellants.*[1]

[1] Reported in 276 Pac. 904.

458

*Pearson & Potts,* for appellants.

*Chadwick, McMicken, Ramsey & Rupp,* and *A. E. Bailey, Jr.,* for respondent.

HOLCOMB, J.—In this action, respondent sued to recover damages in the sum of $896.50 from appellant, by reason of appellant's employe driving a spike into a conduit owned by respondent in the street.

The complaint of respondent, among other things, alleges:

That, at the times mentioned and for many years last past, respondent had been engaged in the general telephone and telegraph business in Seattle, and had maintained and operated its telephone lines and cables over, across and under the streets and alleys of the city; that on the morning of April 23, 1927, appellant W. F. Slezak was engaged in placing steel reinforcements for a bulkhead at Manning street, between 28th avenue southwest and Alki avenue, in that city; that defendant Slezak was notified of the exact location of one of the telephone cables located at Manning street, between 28th avenue southwest and Alki avenue, in the city; that the conduit which contained the trunk cable was fully exposed to the defendant and that the defendant so carelessly and negligently conducted his operation that, on the morning of April 23, 1927, the trunk cable at Manning street, between 28th avenue southwest and Alki avenue, was damaged by the defendant, or by one of the workmen in his employ, by carelessly and negligently driving a spike into the cable, thereby allowing water to penetrate to the insulated wires in the cable and short-circuiting them;

that, by reason of the injury to the cable, it was necessary for plaintiff to repair it, to the damage of plaintiff in the sum of $896.50. Judgment was prayed for that sum.

Appellants answered the complaint, admitting the allegations in paragraphs I, II, III, IV and VII thereof, and denying the allegations in the complaint that appellant was notified of the exact location of one of the telephone cables located at Manning street, etc.; that the conduit which contained the trunk cable was fully exposed to appellant, and that appellant so carelessly and negligently conducted his operation on the morning of April 23, 1927, that the trunk cable there located was damaged by appellant or his workman by carelessly and negligently driving a spike into the cable, thereby allowing water to penetrate to the insulating wires in the cable and short-circuiting them. The damages and the amount thereof were also denied. An affirmative defense of contributory negligence was also alleged in the answer.

Upon these issues, the cause was tried by the court and a jury. A challenge to the evidence was interposed by appellants at the conclusion of the evidence for respondent, which was denied by the trial court at the time, although the trial judge said he was inclined to sustain the challenge; as he was disposed to the view, as a matter of law, that the plaintiff was entitled to judgment against the defendant. He also said he did not think a contractor or subcontractor, in fact anybody, had any right to go into the public streets and begin

"... digging around or driving nails into objects in the street, unless they knew what the objects were, and if they did damage or injury to someone else lawfully there, they were liable for it."

Henceforth, W. F. Slezak will be referred to as if the only appellant.

The trial court let the case go to the jury. Evidence was introduced on behalf of appellant; the jury were instructed, in substance, that, if they found from a fair preponderance of the evidence that, on the date alleged, respondent was lawfully conducting its business in Seattle, and was lawfully using underground cables at the locality alleged; that the underground cables were exposed; that appellant had knowledge of the location of the conduit containing the cable, or by the exercise of reasonable care should have known of the location of such conduit, and, while engaged in steel construction work at the place in question, so negligently conducted such work that the trunk cable of respondent was damaged by one of appellant's workmen driving a spike into the cable and short-circuiting the wires therein, then respondent had been damaged and would be entitled to recovery.

The jury were also instructed that, if appellant was on the ground engaged in working there and received timely notice of the location of the cable, but failed to exercise reasonable care to see that it was not damaged, and, because of such failure, the cable was damaged, then he would be liable for the damage resulting.

Other instructions were given on the theory of negligence, defining negligence, proximate cause, and reasonable care.

Slezak was a subcontractor for Nelson & Peterson, general contractors, who were constructing, for Seattle, on a public street, a concrete abutment to support a bridge over the tracks of a railroad at the locality described in the complaint. Trunk-line cables of respondent, running to West Seattle, ran under Manning street at the point of this construction. These cables were sheathed in lead tubes and placed in

six separate black wooden creosoted conduits, each six inches square, laid in two tiers, three sections high, and covered on the top by a 1″x12″ plank.

All the necessary excavations for the bulkhead were made by Nelson & Peterson, the general contractors. None of the excavating or digging was done by Slezak. At the place where this accident occurred, the excavations had been made for the abutment, and at several places footings necessitated excavating to a greater depth. Respondent's conduits ran diagonally through the corner of one of these footings.

Appellant is a subcontractor who does the work of placing the steel only for reinforcing the concrete structures. Sometime during the forenoon of the day previous to the one in question, appellant informed his employee that the general contractors would pour concrete in the footings the following morning, and instructed him to put the steel in place. Accordingly, the employee, with a helper, went early to the place the following morning, in order that he might have the steel rods placed before the concrete workers came to pour concrete in the footings. These steel rods must be braced by something to keep them in position while the concrete is poured, and the employee attempted to secure the rods by driving two spikes into what he thought were timbers that had been left in the excavation, and placing supporting wires from the spikes to the rods.

According to the testimony of the employee, at the place where the excavation had been made for the footings, there was a mass of timbers, apparently having been placed there for cross-braces to hold up the bridge while the work was going on. The soil in which the excavation had been made was soil which had been filled in, composed of sand, clay and debris, and the conduit into which he drove the spike looked like an

ordinary piece of timber that had been buried for a while in such soil. It was covered with a thin coat of soil so that he could not tell what kind of timber it was, but, thinking it was a piece of solid timber, drove a spike into it.

Both Slezak and the employee testified that they had never been notified by the general contractor, or anyone else, that this conduit was there. Slezak testified that he knew there were pipes and conduits of various kinds and for various purposes generally to be found beneath the surface of the streets in such construction work. His employee also so testified, and that, during the five or six years of his experience, he had come in contact with numerous conduits, but that there was nothing in this particular excavation to cause him to believe that the piece of wood into which he drove the spikes was such a conduit; that it was not so exposed that he could so be informed; that it was merely a timber, about a foot wide, uncovered on top and one side, but so covered with soil that it looked like a piece of solid timber; that he drove the spikes into it, not thinking that it was anything else; that he never knew it was anything else until after he saw the result of the accident.

The jury rendered a verdict for appellants, after which, upon motion for judgment *n. o. v.*, or for a new trial, and after argument thereon, the court granted the judgment *n. o. v.* in favor of respondent for the undisputed amount of the damages, reserving action on the motion for a new trial.

Since the evidence was conflicting upon the question of negligence, we take it that the trial judge granted the judgment *n. o. v.* in favor of respondent because of his belief that, as a matter of law, *a trespass* had been committed which rendered appellant liable for damage

caused thereby, regardless of negligence, or of intention.

Respondent argues here, however, that, not only did the trespass appear as a matter of law, but that, also, upon the evidence as disclosed, the trial court was warranted in holding that negligence conclusively appeared as a matter of law.

Appellant's assignments of error are that the court erred in setting aside the verdict and entering judgment in favor of respondent, and in not entering judgment in favor of appellants upon the verdict of the jury.

■ Appellant urges, first, that respondent cannot rely upon trespass, because it pleaded negligence; and that it cannot rely upon trespass, because no trespass exists under the law.

Respondent, on the other hand, urges that it showed a case of trespass on the part of appellant, and that, in any event, it may rely upon the allegation of negligence, in addition to the allegation showing trespass, under our code of procedure (Rem. Comp. Stat., § 258), prescribing that a complaint shall consist of a plain and concise statement of facts constituting a cause of action, without unnecessary repetition, and a demand for the relief claimed; and that respondent was entitled to plead facts giving rise to the different grounds of liability, and not required to pursue one to the exclusion of the other. *Starwich v. Ernst,* 100 Wash. 198, 170 Pac. 584.

We agree with respondent as to its right to plead as was done.

■ The question then is whether an action of trespass was shown herein; or, if not, whether respondent is not bound by the verdict of the jury that negligence was not shown, under the issues as presented to them.

Since, however, there is at least some conflict in the

evidence and the inferences that the minds of reasonable men might derive therefrom, and the trial court has never exercised its discretion in passing upon the motion for a new trial, under our well established rule, if the judgment *n. o. v.* was erroneous, we cannot decide that respondent is bound by the verdict against it in the former trial.

It will be conceded, for the purposes of this action, that respondent occupied the street at the place in question under a right, at least by sufferance, from the city. Whether it had a valid franchise at the time, or not, is of no concern to anyone except to the city.

That fixes the status of respondent as a licensee, entitled to occupy the street at the place in question with its conduits, but subordinate to the right of the city to make any desired changes, repairs, or improvements in and upon the street. This right the city could not bargain away, and, so far as this case shows, had not attempted so to do. Neither had the city, so far as this case shows, contracted with the general contractors to protect and preserve the property of respondent. As against the city and its contractees, respondent had no right in and to the street that the city or its agents or contractees could not interfere with except for unlawful or wanton interference or in violation of some contract right, which does not exist here.

The theory of respondent and the trial court seems to be that respondent's rights were so superior to the rights of any and all others, that any interference therewith whatever, no matter how slight and no matter how unintentional, would constitute trespass against it.

Respondent quotes, as a definition of trespass on personal property, 26 R. C. L. 937:

"Any unlawful interference, however slight, with the enjoyment by another of his personal property is a trespass. . . . and the appropriation of another's property to one's own use is not allowed even for a temporary purpose."

That very principle rests primarily upon an *unlawful interference*. Many cases cited by respondent as to trespass upon real estate by invasion thereof, or by sending something injurious over, or upon, the real estate of another, are not applicable here. Nor are cases where contract rights were violated, nor cases where purely private parties, having no public rights in the street, interfered with prior occupants for quasi-public uses.

 This question depends largely upon whether or not appellant is to be considered an agent of the city. This, we think, he was. In *Engler v. Seattle,* 40 Wash. 72, 82 Pac. 136, where appellant was injured while in the employ of an independent contractor with the city, we held that, as between the contractor, the city and third persons who might be injured, or whose property might be damaged, he became the servant of the city by operation of law. Hence, in this case appellant became the agent of the city by operation of the law, because he was a subcontractor of a general contractor of the city, engaged in improving a public street of the city.

The city itself, in its corporate capacity, if it had constructed the excavation in question, would be bound, under the law, to exercise due care in the premises, and would be liable for any damages occasioned by its negligence in the performance of the work. *Portland Gas & Coke Co. v. Giebisch,* 84 Ore. 632, 165 Pac. 1004, L. R. A. 1917E 1092.

The same decision is authority, also, to the effect that a contractor, performing work at the instance of

the city, is also chargeable with the duty of reasonable care, and is liable in damages *for negligence* in the performance of the work.

See, also, *Pacific Laundry Co. v. Pacific Bridge Co.,* 69 Ore. 306, 138 Pac. 221; *Millville Gaslight Co. v. Sweeten,* 75 N. J. 23, 68 Atl. 1067; Dillon, Municipal Corporations (5th ed.), § 1243.

The contractors, as agents of the city, were liable to no greater extent than the city itself would be. The city itself could not be held liable as for a trespass in such a case as this. It could only be liable for negligence or want of due care.

*Reynolds County Telephone Co. v. City of Piedmont,* 152 Mo. App. 361, 133 S. W. 141; *Dakota Central Telephone Co. v. Shipment Construction Co.,* 49 S. D. 251, 207 N. W. 72; *Brunswick Gaslight Co. v. Brunswick Village Corp.,* 92 Me. 493, 43 Atl. 104; *Portsmouth Gas-Light Co. v. Shanahan,* 65 N. H. 233, 19 Atl. 1002.

We have sustained the same principle, even in a case where the protection of the state constitution against taking or damaging private property for public or private use, without just compensation having been made, was invoked, in the case of a county causing its highway to be improved, in *Granger Telephone & Telegraph Co. v. Sloane Brothers,* 96 Wash. 333, 165 Pac. 102.

In that case, we held that, although the telephone company had a right in the highway by reason of its franchise, that right was a qualified one subject to the paramount right of the county to improve the highway for the use of the public. We there held that the county itself was not liable, and that therefore the contractor doing the work, who was the agent of the county, where no negligence had occurred, would not be liable.

We think the same principles apply here. The contractor and the subcontractor were agents of the city. The city would be liable only for negligence or for willful trespass. It cannot be said that there was any intentional injury done to respondent in this case, and therefore there was no willful trespass.

The most that may be said is that there was a lawful act negligently done. If that is true, that was a question for the jury under conflicting facts. The jury found that there was no negligence in finding for appellant. Therefore, there being no trespass and negligence being negatived by the verdict of the jury, it is manifest that the trial court erred in setting aside the verdict and granting judgment for plaintiff, *n. o. v.*

The judgment must therefore be reversed, and the cause remanded with instructions to consider and pass upon the motion for a new trial, and for further proceedings in conformity herewith.

MITCHELL, C. J., FULLERTON, TOLMAN, and FRENCH, JJ., concur.