## ADERHOLD v. STEWART.

No. 24291.    April 30, 1935.

James C. Cheek and Frank E. Lee, for plaintiff in error.

Ledbetter, Stuart, Bell & Ledbetter and Minton & Minton, for defendant in error.

PER CURIAM. Bernice L. Stewart commenced this action against Dr. T. M. Aderhold and the El Reno Sanitarium and Training School for Nurses, a corporation, for damages alleged to have been suffered by reason of the negligence of the defendant in leaving a piece of gauze, known as a surgical sponge, in the body of the plaintiff when the plaintiff was operated on by the defendants for appendicitis. The action was

dismissed by plaintiff as to defendant El Reno Sanitarium and Training School for Nurses.

The case proceeded to trial against Dr. T. M. Aderhold and resulted in a verdict for plaintiff in the sum of $9,896, upon which judgment was entered, and from which Dr. Aderhold appeals.

The parties will be referred to herein as plaintiff and defendant, as in the court below.

The evidence in this case discloses that the plaintiff was brought to the hospital of defendant, late in the afternoon of June 19, 1931; that the defendant made an examination of her condition and advised an immediate operation. He then proceeded to operate, with the assistance of two nurses, for appendicitis; that during this operation he discovered that the patient had gallstones, which should be removed; that he made a second incision several inches above the first and removed the gallstones; that he placed a drainage in the lower incision, which was for the removal of the appendix, and treated the patient in the hospital for two weeks, when he removed the rubber tube and gauze used in the drainage and permitted the patient to return to her home, some 35 miles away.

After the patient returned to her home, the upper wound, for gallstones, healed quickly and normally, while the lower wound continued to discharge pus and did not heal.

The patient returned to Dr. Aderhold on several occasions for further treatment, and on September 2d, he examined the wound and made a probe with his instruments and said he found no foreign object in the wound. The patient returned to her home, where she was treated by a local physician, who dressed the wound several times.

The plaintiff further testified that under the instruction of Dr. Aderhold her husband dressed the wound two or three times daily; that she suffered constant pain and the wound continued to discharge pus, until she returned to Dr. Aderhold on December 30, 1931: that on this occasion the defendant examined the wound and discovered the frazzled edge of a gauze sponge; he applied his forceps and pulled from the wound a piece of gauze, said by the defendant to be two inches square and by the plaintiff to be four inches square; that in pulling the gauze from the wound, the plaintiff cried out in great anguish that the doctor was

killing her. The defendant threw this piece of gauze in the stove. The plaintiff testified that she asked the doctor how that happened to be in there, and that he said, "It was left in there," and made no further comment. The patient then returned to her home and the wound healed over within about two weeks.

The defendant testified that he did not leave any sponge in the body of the plaintiff at the time of the operation; that he did not find any sponge either in the wound or the body cavity at the time he made the probe on September 2d, and that the sponge pulled from the wound by him on December 30th was not the kind of sponge that he used at the operation; that he adopted the recognized and customary method of keeping count of sponges used in an operation; that this consisted of counting the sponges when they were brought into the operating room, instructing a nurse to keep count of the sponges as they were inserted in the incision and as they were taken out, and again counting the sponges at the end of the operation. He said that these counts showed that there were no sponges left in the body cavity. The nurses assisting in the operation testified substantially to the same facts.

The plaintiff testified that neither she nor her husband nor any one else had placed any sponge or gauze in the wound in question, at any time between the date of the operation and the day the defendant removed the gauze from the wound on December 30th.

1. Complaint is made that the petition fails to state a cause of action. In substance, the petition states that the defendant for a valuable consideration agreed to operate on plaintiff; that in the course of the operation he left a gauze sponge four inches square in the body of the plaintiff; that this sponge remained in plaintiff's body from June 19th until December 30th, when it was removed from the wound by defendant; that on account of these acts the defendant was guilty of negligence, which negligence was the proximate cause of the injury to plaintiff. The petition then described the nature of her injuries and resultant suffering and asked for damages in the sum of $25,000. The defendant contends that "the leaving of the gauze within the body is not negligence per se, nor prima facie evidence of negligence"; that "the doing of any act in the course of a surgical operation is never to be considered a negli-

gent act unless it be contrary to the approved and accepted method of procedure by experts in the profession." He contends, further, that the petition, in addition to stating the fact that the sponge was left in the patient's body, should go further and say, in substance, "that such act upon his part was negligence in that same was contrary to the recognized, accepted method of performing this operation." Under our rule of pleading, that the petition must contain "a statement of the facts constituting the cause of action, in ordinary and concise language, and without repetition" (sec. 198, O. S. 1931), and the definition of negligence, which is, "* * * a want of such attention to the nature or probable consequences of the act or omission as a prudent man ordinarily bestows in acting in his own concerns" (sec. 1783, O. S. 1931), we hold that this petition states a cause of action, under the rules of pleading negligence in ordinary cases, and we do not find that any different rule is required in pleading negligence against a surgeon.

2, 3, 4. The defendant contends that there is not sufficient evidence to take this case to the jury, and that defendant's demurrer to plaintiff's evidence should have been sustained, and argues that if the defendant adopted and used the recognized and customary method of keeping track of the sponges, he could not be held for negligence even if a sponge was left in the plaintiff's body, and cites authorities which tend to support this theory. On the other hand, there are substantial authorities to the effect that the leaving of a sponge in the body of a patient by a surgeon is negligence per se. (21 R. C. L. 388, and authorities cited.) We believe that a better rule, however, is the one adopted by the majority of the courts and by this court, that a surgeon, like other persons, is bound to exercise ordinary care to avoid injuring any one with whom he comes in contact. The fact that a surgeon adopted and used the recognized and customary method of keeping count of the sponges used during an operation will not afford a complete shield from liability, if in fact a sponge was left in the patient's body, but the real test is whether he, and the nurses acting under his authority, exercised ordinary care in keeping track of the sponges and seeing to it that they were all removed before the incision was closed. This rule seems to have been followed in the case of Mayberry v. Myers et al., 103 Okla. 175, 229 P. 563; anr in Cassingham v. Berry, 67 Okla. 134, 150 P. 139.

In a more recent case, Jackson v. Hansard, 45 Wyo. 201, 17 P. (2d) 659, the Supreme Court of Wyoming, in a well-considered opinion, upholds the same rule. In 35 N. C. C. A. 230, the rule is stated in the following language:

"In an action against a surgeon for malpractice in operating on plaintiff for appendicitis, in that, as alleged, a sponge or gauze, more than three months later discharged from the body of plaintiff through his rectum, was negligently left in plaintiff's body at the time of the operation, held that, under the evidence which included testimony of attendant nurses that sponges used in the operation were checked and rechecked and that no one of them was missing, the question of whether the sponge or gauze was left in the body of plaintiff, as he claimed, was a question for the jury.

"While a surgeon performing an operation cannot, ordinarily, be held responsible for the negligence of some one else, it is his duty to exercise reasonable care in seeing that no foreign substances, which ought to be removed, are left in the body, and he should not, ordinarily at least, be able to relieve himself of liability for injury to a patient, caused by sponges or pads, by an exclusive reliance on a custom or rule requiring the attendant nurse to count the sponges or pads used and removed, and on the nurse's statement as to the count.

"In an action against a surgeon for malpractice in operating on plaintiff for appendicitis, in that, as alleged, a sponge or gauze, more than three months later discharged from the body of plaintiff through his rectum, was negligently left in plaintiff's body at the time of the operation, held that, under the evidence which included testimony of attendant nurses that the sponges used in the operation were checked and rechecked and that no one of them was missing, the question of whether defendant used ordinary care in seeing that all of the sponges were removed from plaintiff's body, when the operation was completed, was a question for the jury."

In the case before us we have a direct conflict of testimony as to the basic fact in this case. The defendant's testimony is to the effect that he used about 41 sponges in the body of plaintiff during the operation; that he did not leave any of these sponges in the plaintiff's body, but that he did remove a sponge from her wound on December 30th. The plaintiff's testimony was to the effect that no one else ever placed any sponge in her body at any time. Under these circumstances, two questions arise:

(1) Did the defendant leave a sponge in the body of plaintiff from June 19th to December 30th?

(2)   If he did so, was this negligence on his part?

We believe these are properly jury questions and that the trial court committed no error in submitting these questions to the jury.

5.   The fact that one of the nurses who was assigned the task of keeping count of the sponges might have made a miscount in the sponges would not alter the situation. It was admitted by the defendant that the nurses were employed and directed by him, hence he would be liable for their acts of negligence in connection with the operation. Aderhold v. Bishop, 94 Okla. 203, 221 P. 752.

6.   It is next contended that the court erred in giving instruction No. 11, which is as follows:

"You are further instructed that it is admitted in evidence that Mrs. Bernice L. Stewart submitted herself into the charge and care of the defendant, T. M. Aderhold, for the purpose of an operation. Testimony had been introduced as to her physical condition before and since the operation. You will take into consideration, of course, that a certain degree of physical disability, pain and suffering would naturally result from the operation. If you find from the evidence in this case that the defendant was guilty of negligence, that is, that he negligently permitted this piece of gauze to be and remain in the body of Mrs. Bernice L. Stewart and that such negligence on his part was the proximate cause of injury to her, injury which was in addition to what she would naturally have suffered as a result of the operation, it will be your duty to return a verdict for the plaintiff. The amount of your verdict would be in such sum as, in your good judgment, you deem sufficient to compensate her for such injury and you are instructed that physical pain, mental suffering and inability to perform her usual and customary duties are subjects for your consideration in arriving at such damages which you may find, if any, the plaintiff, Bernice L. Stewart, is entitled to recover."

Complaint is made that this instruction imposes upon the jury the duty to segregate the injuries suffered by plaintiff, due to the negligence of defendant in leaving a sponge in her body, from her injuries due to the operation itself, without any evidence to support said segregation. The question arises, Was there any evidence of extra suffering by plaintiff due to the presence of the sponge in her body for six months? We think there was. It was admitted that the incision made for the removal of the gall-stones, where no sponge was involved, healed promptly and completely, and that the other wound drained pus and caused the plaintiff pain and suffering continuously until the sponge was removed in December, and then that the wound promptly healed. Under these circumstances, it would be unreasonable to say that there was no evidence of extra suffering on account of the sponge. We believe the question of extra suffering due to the sponge being left in plaintiff's body was properly left to the jury, and that the court committed no error in giving instruction No. 11.

7.   It is next contended that the court erred in admitting incompetent, irrelevant, and prejudicial testimony on behalf of the plaintiff. This included testimony as to the charges of Dr. Aderhold for the operation, to which the defendant duly objected. Since there was no claim in this case that the operation itself was unskillful or in any way improperly performed, the return of the fee for the operation was not and could not have been properly asked by the plaintiff. Hence, the above question and answer was immaterial. The court properly instructed the jury, in instruction No. 12, that recovery could be had by plaintiff, Bernice L. Stewart, for doctors' bills and expenses in the event they found the defendant guilty of negligence, limited to the bills and expense incurred by reason of the aggravation of her condition due to the defendant's negligence. Hence, the jury was not misled by the immaterial testimony above referred to, and we are not warranted in holding such testimony to be reversible error.

Defendant also objected to Mrs. Scott, a lay witness, testifying to what she saw while the defendant was dressing the wound at the conclusion of the operation, and also that she was with Mrs. Stewart frequently between the time of the operation and the removal of the sponge on December 30th; that she appeared to be suffering pain at different times; and further that one of the lay witnesses saw a sponge inserted in the body cavity, which she did not see removed; and another she heard Dr. Aderhold say, "There's one," in speaking of the sponges, all of which was objected to on the ground that these witnesses were not doctors or nurses, not skilled in the science of surgery, and that they knew little or nothing about surgical operations, and hence, were not competent to testify about these matters. It is well established that questions of methods and the technique of surgical op-

erations are matters exclusively within the knowledge of surgeons and others trained in the science of surgery, but as to commonplace conditions and commonplace actions of a physician or nurse, in connection even with a surgical operation, these may be observed and testified to by an ordinary layman. Hence, it was not error for the court to permit the witnesses to testify as above indicated.

In Reinhold v. Spencer, 26 P. (2d) 796, the Supreme Court of Idaho held:

"Lay testimony of plaintiff and others that after hypodermic needle was left in the plaintiff's chest, patient suffered severe pain in chest in reaching or stooping and had difficulty in performing manual labor held admissible in malpractice case."

In Wynne v. Harvey, 163 P. 67, the Supreme Court of Washington said:

"A patient, who is a layman, is possessed of sufficient knowledge to render competent his testimony as to commonplace conditions and effects concerning a surgeon's negligence in treatment following operation."

8. It is next claimed that the plaintiff was guilty of misconduct in the presence of the jury, which was prejudicial to the rights of the defendant.

The evidence was that near the close of the first day of the trial, while the plaintiff was undergoing cross-examination, she broke down and cried and became hysterical and had to be taken from the witness stand and laid upon one of the tables in the courtroom; that thereupon the court adjourned for the day, and when court convened on the following morning, the plaintiff came into the courtroom leaning heavily on the arms of her relatives and friends, and that a number of pillows were brought in to place in her chair for her use in the courtroom. Counsel for defendant made timely objections and asked the court to declare a mistrial on the ground that this conduct on the part of the plaintiff, whether voluntary or involuntary, was prejudicial to the rights of the defendant. The court, after a lengthy discussion and consideration of the matter, overruled the objection of defendant's counsel and continued the case until the following morning, when the trial proceeded and the plaintiff returned to the witness stand and finished her testimony under cross-examination. This occurrence was unfortunate, but no one could say, and no one did say, that the plaintiff's conduct was premeditated or that she was attempting to appeal to the sympathies of the jury.

Under such circumstances, the trial judge, who was in a position to observe this conduct of the plaintiff, as well as the attitude of the jury and to estimate what amount, if any, of prejudice was created by such conduct, is in a better position than the appellate court to estimate and appraise the effect of such a happening, and where the trial court exercises a sound discretion in passing on a question of mistrial, his findings will not be disturbed in the absence of any evidence of abuse of this discretion.

9. Defendant further complains that the verdict of the jury is excessive. The plaintiff alleged in her petition that her injuries were permanent. There was no evidence, however, either lay or expert, to support this contention. There was definite evidence that she was still suffering at the time of the trial, due probably to the operation or to negligence in leaving the sponge in her body, but there was no evidence as to which was the cause of her suffering at that time. The evidence was that the sponge was removed from her body on December 30th, and the wound healed up within about two weeks thereafter. Up to the time the wound healed there was objective evidence of suffering, a part of which, at least, could be attributed to the presence of the sponge in her body, but after the wound healed her sufferings were largely subjective, and both the continuance of such suffering and their connection with the sponge would be matters of expert testimony only. Shawnee-Tecumseh Traction Co. v. Griggs, 50 Okla. 666, 151 P. 230.

There was no such testimony offered; hence, whatever suffering she might have endured after the wound healed could not be charged to the fact that a sponge had been left in her body, except as a pure surmise. It clearly appears from the size of the verdict, $9,896, that the jury must have taken into consideration probable future suffering of plaintiff, that is, beyond the period when the sponge was removed and the wound healed. Since there was no competent evidence to support such a finding, it results that the verdict is excessive.

It is therefore ordered that if the plaintiff will file a remittitur for all in excess of the sum of $5,000, and interest thereon from the date of the verdict, within 30 days from the receipt of the mandate herein by the trial court, the judgment as thus modified will be affirmed; otherwise, judgment will be reversed and remanded and a new trial granted.

The Supreme Court acknowledges the aid of Attorneys A. O. Harrison, Rayburn L. Foster, and James D. Talbott in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Harrison and approved by Mr. Foster and Mr. Talbott, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and RILEY, BAYLESS, BUSBY, CORN, and GIBSON, JJ., concur. WELCH, J., absent. PHELPS, J., not participating.