No. 19,092.

MOUNTAIN STATES TEL. AND TEL. COMPANY *v.* HORN TOWER CONSTRUCTION CO.

(363 P. [2d] 175)

Decided July 3, 1961. Rehearing denied July 31, 1961.

Messrs. AKOLT, TURNQUIST, SHEPHERD & DICK, Mr. LAURENCE W. DEMUTH, JR., Mr. CARL F. EIBERGER, Mr. LAEL S. DEMUTH, for plaintiff in error.

Messrs. WOOD, RIS & HAMES, Mr. WILLIAM J. MADDEN, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE DOYLE.

PLAINTIFF in error as plaintiff instituted this action in the trial court seeking damages for the severance by defendant's bulldozer of an underground conduit. We refer to the parties as they appeared in the trial court. Review is sought of a judgment dismissing plaintiff's claim based on trespass. The trial court submitted the question of defendant's negligence to the jury and the verdict was for defendant. A claim based on absolute liability was

dismissed before trial and the propriety of this ruling is not before us.

On July 16, 1957, defendant, pursuant to a contract, was engaged in rough grading a portion of Federal Boulevard in preparation for final grading and installation of a concrete curb and gutter along the west side of Federal between the east and west streets of Exposition Avenue and Walsh Place. While so engaged its bulldozer struck and severed a large, buried conduit and cable which served 3,906 telephone subscribers in the area. Plaintiff had installed the cable and conduit along Federal in 1952 and at that time had obtained the required excavation permit from the City and County of Denver. There was some dispute at the trial as to whether the conduit had been located properly. The plaintiff's map filed with the city and other utilities approximately one year after the placing of the conduit showed it to be uniformly 17 feet from the west property line. However, testimony at the trial showed that it varied somewhat from the 17 feet shown on the map and also disclosed that it varied in depth from 12 inches to as much as 10 feet. The impact which caused the damage here complained of occurred 18 feet from the west property line.

Personnel of plaintiff were at the scene advising the defendant's workmen as to location of the conduit and often the location was determined by digging test holes which were approximately 6 inches in diameter. Two such test holes had been made at the intersections between which the injury occurred, but no test hole had been driven at the exact place of the incident. The evidence also disclosed that plaintiff had, on occasion, removed and relocated its conduit when it was shown that such location would interfere with the widening project, but had not done so in the present instance and had not been requested to do so.

In urging that the cause must be reversed, plaintiff contends that:

1. The trial court erred in ruling that the acts of de-

fendant did not constitute a trespass to property; that it was error to refuse to submit to the jury the issue whether the acts constituted a trespass.

2. It was error to submit to the jury the issue of its contributory negligence; that there was no evidence showing any fault on its part.

I.

A first inquiry is whether plaintiff's right in the real property at the place of the injury is such that invasion thereof would constitute a trespass to land. C.R.S. '53, 50-5-1, authorizes a telephone company to construct and maintain lines upon and under any public highway provided its construction does not obstruct or hinder the use of the street. 50-5-8 requires that consent of municipal authorities be obtained. The extent of this right is pointed up in *Moffat v. City and County of Denver,* 57 Colo. 476, 143 Pac. 577, a condemnation proceeding in which Denver sought to widen and extend a public street. It sought to compel the water company to move its pipes. The latter contended that the right which it had acquired by its franchise was a property right, deprivation of which required fair compensation. This contention was rejected, the Court holding that the right granted was qualified and subordinate; that the rights granted were " * * * subject to the power of the municipal authorities to make such reasonable changes in the grade or an improvement therein as in their judgment the public interests demanded and required."

The defendant in the case at bar was a sub-contractor. The contractor under which it was operating held the prime contract with the city, thus defendant was proceeding under municipal authority and had a valid right at least equal to that of plaintiff in the highway. Cf. *Granger Tel. & Tel. Co. v. Sloane Bros.,* 96 Wash. 333, 165 Pac. 102, and *Pacific Tel. & Tel. Co. v. Slezak,* 151 Wash. 457, 276 Pac. 904. The Washington Court ruled that a contractor performing work for the

county or city enjoys the same rights as the county or city as against third persons.

In the instant case it seems clear that plaintiff would not have a trespass to realty claim against Denver. Since Denver would not be subjected to liability for invasion of a real property interest of plaintiff, it follows that plaintiff would not have such right against defendant. The right violated, if any, was that of personal property.

## II.

Trespass to chattels is defined as the intentional interference with the possession, or physical condition of a chattel in the possession of another, without justification. *Prosser, Torts,* 64 (2d ed.). The issue presented is whether defendant's conduct was intentional within the meaning of the above definition. Plaintiff contends that it is not necessary that the defendant shall have acted maliciously toward the plaintiff's property; that it was sufficient if defendant intentionally did the act which resulted in the damage. They cite *Prosser,* supra, Section 8, wherein the author declares that intent is present not only where the actor intends to bring about the results but also where the results are substantially certain to happen because of the nature of the actor's conduct.

It seems clear that the pulling of the trigger or the swinging of a club within range of the victim is conduct which leaves little, if any, question as to the intent of the actor. Similarly the volitional trespass to land is actionable and the trespasser will not be heard to say that he did not intend to invade the close of the owner. The driving of an automobile in heavy traffic will not subject the driver to a claim in trespass by one whose car is struck. In this latter case liability would have to depend on proof of negligence. There was a time when a man acted at his peril and the doing of the act proved the intent. Since the emergence of negligence as an independent tort during the last century, fault has been a necessary ingredient of tort liability except in the area of ultra-hazardous activity. This means that the alleged

wrongdoer must have intended the result, or must have acted wantonly or at least negligently. Unintentional non-negligent interference with chattels is not actionable. See *Holmes, The Common Law,* 77-82, 88-96; *Brown v. Kendall,* 60 Mass. (6 Cushing) 292 (1850); *The Nitro-Glycerine Case,* 82 U.S. (15 Wall.) 524, 21 L. Ed. 206 (1872).

The Supreme Court of the United States, in this latter decision, had before it the question whether trespass would lie where a mallet and chisel was applied to a box containing nitroglycerine. An explosion resulted but it appeared that the defendant's agents were not aware, nor was the community generally, of the explosive qualities of nitroglycerine. Nonliability was held and the Court said:

" * * * The mere fact that the injury has been caused is not sufficient to hold them. No one is responsible for injuries resulting from unavoidable accident, whilst engaged in a lawful business. A party charging negligence as a ground of action must prove it. He must show that the defendant, by his act or by his omission, has violated some duty incumbent upon him, which has caused the injury complained of.

\* \* \*

"Here no such proof was made, and the case stands as one of unavoidable accident, for the consequences of all such accidents must be borne by the sufferer as his misfortune."

The doctrine of this case has been universally accepted and applied and has been the basis for the fundamental principle of the law of negligence and its corrollary, the law of wantonness, that fault of the actor is an essential ingredient of liability. The *Restatement of the Law of Torts,* Sec. 218, has specifically recognized this. It declares that one who uses or otherwise intentionally intermeddles with a chattel in the possession of another is liable in trespass under conditions there set forth. Comment (b) to this section lays down the requirement that

the intermeddling shall have been intentional. See also 1 Harper and James, *The Law of Torts,* 109, 110, wherein the authors in discussing this, say:

"Under the principle of law that allows recovery for a trespass to chattels, it is necessary that the defendant have acted for the purpose of interfering with the chattel, or, what is almost the same thing, that he have acted with knowledge that such would be the result of his conduct. *In other words, he must have intended the intermeddling.* If he does not intend thus to meddle, he is not liable today as a trespasser; but if his conduct is negligent, he is liable under the principles of the law of negligence. \* \* \* If he intends the interference with the plaintiff's goods, since the intent is the factor which makes the conduct tortious, liability is said to be for trespass.

\*  \*  \*

"While a trespass to chattels requires an intention to intermeddle with the goods, it does not require a guilty or culpable intention. All that is necessary is an intention physically to interfere with the goods themselves.

\*  \*  \*

"In other words, in the case of accidental damage, liability without fault is the exception and non-liability the rule; in the case of intended intermeddling, liability without fault is the rule rather than the exception." (Emphasis supplied.)

Counsel for plaintiff rely on *Illinois Bell Telephone Co. v. Charles Ind Co.,* 3 Ill. App. (2d) 258, 121 NE (2d) 600, and the cases there cited. It can be conceded that where there exists a substantial degree of likelihood, if not certainty, that the acts of defendant would result in injury to plaintiff's property right, liability could result. One of plaintiff's arguments is that a question of fact existed as to whether the damage to the plaintiff's property was so highly probable as to be substantially certain to happen and that the question whether there was substantial certainty was for the jury. This argument

assumes not a lack of fault, but a high degree of fault. Carried to its extreme, the argument means that the defendant could be found guilty of something in the nature of wanton conduct which concededly could be a substitute for intentional intermeddling with the plaintiff's property. Cf. *Restatement, Torts,* Sec. 500 (1934). Sub-sections (f) and (g) of this section point out that substantial certainty of the result is necessary to the existence of wanton conduct. For the plaintiff to argue on the one hand that the doing of the act sufficiently imports an intent to bring about the result and on the other that a question of fact exists as to whether there was substantial certainty in the mind of defendant as to the result which was ultimately brought about is inconsistent. In the latter argument, plaintiff maintains that defendant's conduct was tantamount to intent to interfere; that fault is present and that defendant should be therefore held liable. We are at a loss, however, to understand how there can be a question of fact as to substantial certainty of the result when the jury, by finding nonnegligence, has already determined by its verdict that the result was not even reasonably foreseeable to a prudent man.

We must conclude that the evidence, considered in its very best light, does not create any question of wantonness of the defendant. The evidence indicates that in the conduct of the work effort was made to avoid injury. We see no evidence indicating that defendant proceeded recklessly or wantonly. We are of the opinion that the plaintiff's right to recover depended upon proof that defendant was negligent. The case was submitted under proper instructions presenting this question and the issue was determined against the plaintiff. Plaintiff cannot now obtain a resubmission to the jury of the question whether defendant was wanton or reckless, which conduct involves a higher degree of culpability than negligence.

## III.

A final question is whether on a consideration of the entire record it must be concluded that there was insufficient evidence of the plaintiff's contributory negligence to warrant submission of the question to the jury. The cable lines here were not located in compliance with the map presented to the city and the only way that the exact location could be determined was by digging. Instead of electing to itself move its conduit once it learned that the street work was to be done, plaintiff elected to run the hazards of having the street work done with the conduit in the ground. Furthermore, it is to be noted that when the work started, plaintiff participated in it. There was testimony to indicate that one of plaintiff's employees furnished erroneous advice. Plaintiff denied this. We are of the opinion that the circumstances fully justified submission of the question of plaintiff's contributory negligence to the jury.

Being of the opinion that the trial court was correct in its rulings and that no substantial basis for reversal exists, the judgment is affirmed.

MR. JUSTICE MOORE and MR. JUSTICE DAY concur.