OPINION OF THE COURT
Charles B. Lawrence, J.
In three actions, heretofore consolidated, brought by New York Telephone Company, Consolidated Edison Com *728 pany of New York, Inc., and the Brooklyn Union Gas Co. (hereafter Utilities), seeking to recover expenses allegedly incurred in removing and relocating overhead and underground facilities from certain designated streets to make way for construction of a public sewer project, the defendants, Mascali, Zindler and Copat Construction Corporations, a joint venture (hereafter Joint Venture), have moved pursuant to CPLR 3211 (subd [a], par 7) to dismiss the complaints for failure to state a cause of action, and also for summary judgment pursuant to CPLR 3212. The defendant, the City of New York (hereafter City), by cross motion also seeks to dismiss the complaints for failure to state a cause of action. The third-party defendants, by cross motion, seek dismissal of the City’s third-party complaints and also plaintiffs’ complaints. Plaintiffs, by cross motions and affidavit, seek an order compelling the defendants and third-party defendants to complete the examinations before trial commenced pursuant to court order, and also discovery and inspection of numerous documents and records. (Seven motions in all.)
These actions arise from the same occurrence and, for all purposes relevant to these motions, are based upon identical allegations seeking the same relief.
For the reasons hereinafter stated, the motions of the defendants to dismiss the plaintiffs’ complaints for failure to state a cause of action are granted; the cross motions of the third-party defendants are also granted; and the cross motions of the plaintiffs are denied, as moot.
FACTS
Heretofore, the City, as part of the State’s “Pure Water Program”[1] undertook several water pollution control projects, among which was the Red Hook Water Pollution Control Project, which included the Red Hook Interceptor Sewer Project, the planning and construction of which gave rise to these lawsuits.
As it appears from the affidavits and memoranda submitted herein, sometime prior to 1969 the City in carrying *729 out plans for the Red Hook Water Pollution Control Project, selected a site south of the Battery Tunnel for its water pollution control plan and laid out tentative plans for the interceptor sewer which was to bring raw sewage to the treatment plant for processing.
Soil test borings were made of the proposed sewer route over extended periods of time and along with other valid governmental considerations, presumably including, but not limited to, traffic congestion, existence of other sewer lines along the route and economic reasons, the original route of the interceptor sewer was finally established by the City, part of which was to be along Van Brunt Street.
On or about October 1,1969, according to the third-party complaint herein, the City entered into a contract with the third-party defendant, Andrews & Clark, for the preparation of complete and final plans for the construction of the Red Hook Intercepting Sewer, from Erie Basin to De Graw Street. During the preparation of the plans, it appears that Andrews & Clark consulted with the Utilities herein asking for their comments.[2]
Upon completion and acceptance of the final plans, the City solicited public bids for the contract for construction of the sewer, which, on March 14, 1975 was awarded to the Joint Venture, the codefendants herein.
Thereafter, the City through said Joint Venture, on or about March 18, 1975 notified and directed plaintiffs to remove or relocate their facilities along Van Brunt Street, in the path of the proposed sewer, pursuant to the provisions of section 683a4-17.0 of the Administrative Code of the City of New York. Plaintiffs complied with the demand and removed their facilities, and construction of the sewer was commenced in or about May, 1975.
In December, 1975, the City ordered construction halted after a building alongside the path of the sewer collapsed, causing at least one death. The City engaged consulting engineers to investigate the cause of the collapse, and review construction procedures and methods for the balance of the construction. The engineers reported that further construction along Van Brunt Street would cause *730 serious disruption to the community and threaten its viability. Additionally, many structures would have to be shored, braced or otherwise strengthened, and there would have to be some rebuilding. As many as 40 structures would have to be underpinned.
Based on the engineering report, and other considerations, and after holding meetings, including meetings with representatives of the Utilities, the City, on or about September 28, 1976 determined “that Imlay Street was a far safer and more economical route for the interceptor,” and accordingly rerouted the sewer down Imlay Street. Thereafter plaintiffs were directed to relocate their facilities along the new route selected for the sewer.
The plaintiffs seek to recover the cost of relocating their facilities situated along Van Brunt Street, the first proposed route for the sewer project, contending that the City and the codefendants acted wrongfully and negligently in selecting the first route, and were negligent in the manner in which the construction was commenced and conducted. Plaintiffs also assert causes of action based on intentional misrepresentation; deprivation of property without just compensation; denial of equal protection under the Federal and State Constitutions; and unjust enrichment. The plaintiffs make no claim to recover the costs relating to the second relocation of their facilities along Imlay and other streets where the sewer was finally constructed.
DISCUSSION
Underlying all of the plaintiffs’ claims is a contention or theory that there was some property right or duty owed to the Utilities which the defendants interfered with or breached.
Neither contention is valid. On the contrary, the Utilities have an absolute duty to remove their facilities at the request of the City, at their own expense, when the City in the performace of its governmental functions (as opposed to its proprietary function) embarks upon a project which necessitates such removal. (See Matter of Consolidated Edison Co. of N. Y. v Lindsay, 24 NY2d 309.)
In obtaining a franchise, a public utility acquires a mere privilege or permit to use part of the street for a special *731 purpose. It acquires no property right or interest in or appurtenant to real property. (New York Tel. Co. v Town of North Hempstead, 41 NY2d 691, 700; Matter of Consolidated Edison Co. of N. Y. v Lindsay, supra, at p 318; New York Tel. Co. v City of Binghamton, 18 NY2d 152, 162.)
The City owes no duty to the Utilities in the selection of the sewer route, nor will the courts concern themselves with the wisdom of such selection (see New York State Elec. & Gas Corp. v City of Plattsburg, 168 Misc 597, 600, mod and affd 256 App Div 732, mod 281 NY 450).
In adopting the route for the sewer, the City was not obligated to select the best possible route, provided the route selected was reasonable and had a rational basis (Uppington v City of New York, 165 NY 222, 229). Nor was the City obligated to consult the mere convenience of the plaintiffs (Utilities), or to save them from expense to the detriment of the public. (See Necaro Co. v Eighth Ave. R.R. Co., 220 App Div 144, 147; Western Union Tel. Co. v Electric Light & Power Co. of Syracuse, 178 NY 325, 331.)
The selection of the route was an administrative decision by the City. It depended on the discretion and the judgment of the municipal authorities with which the courts are reluctant to interfere (see Weiss v Fote, 7 NY2d 579; Lincoln Trust Co. v Williams Bldg. Corp., 229 NY 313; Western Union Tel. Co. v Electric Light & Power Co. of Syracuse, supra, at p 333), and the courts will not look at the wisdom of the selection.
“Lawfully authorized planning by governmental bodies has a unique character deserving of special treatment as regards the extent to which it may give rise to tort liability. It is proper and necessary to hold municipalities and the State liable for injuries arising out of the day-by-day operations of government — for instance, the garden variety injury resulting from the negligent maintenance of a highway — but to submit to a jury the reasonableness of the lawfully authorized deliberations of executive bodies presents a different question. * * * To accept a jury’s verdict as to the reasonableness and safety of a plan of governmental services and prefer it over the judgment of the governmental body which originally considered and *732 passed on the matter would be to obstruct normal governmental operations and to place in inexpert hands what the Legislature has seen fit to entrust to experts. Acceptance of this conclusion, far from effecting revival of the ancient shibboleth that ‘the king can do no wrong’, serves only to give" expression to the important and continuing need to preserve the pattern of distribution of governmental functions prescribed by constitution and statute.” (Weiss v Fote, supra, at pp 585-586.)
It is well settled, both by statute and under common-law rule, that a public utility cannot recover expenses incurred in relocating its structures in public streets, to facilitate the construction of a public improvement project. While public utilities are permitted to lay their structures in or beneath the public streets, they “are bound to relocate their structures at their own expense whenever the public health, safety or convenience requires the change to be made.” (Transit Comm. v Long Is. R.R. Co., 253 NY 345, 351; New York City Tunnel Auth. v Consolidated Edison Co. of N. Y., 295 NY 467, 475; see, also, Administrative Code, § 683a4-17.0; Matter of Consolidated Edison Co. of N. Y. v Lindsay, 24 NY2d 309, 316, supra; New York Tel. Co. v City of Binghamton, 18 NY2d 152, 159, supra.)
That the foregoing rule applies with respect to public sewer construction projects in particular, such as the sewer project upon which, this action is based, is confirmed by a long list of precedents. (See Paterno & Sons v Jamaica Water Supply Co., 52 AD2d 595; Necaro Co. v Eighth Ave. R.R. Co., supra; Di Menna & Sons v City of New York, 114 NYS2d 347, and authorities cited at p 352.)
As appears from the papers submitted herein, the selection of the route of the sewer was made by the City at least two years before the Joint Venture had any knowledge of the project and some five or more years prior to the letting of bids. It is obvious that the Joint Venture had no input in the route selection, nor can it be said that by becoming the successful bidder on the construction contract, it adopted the route selected so as to become independently liable for the selection of the route, if in fact liability for said selection could attach to anyone. (See MacKnight Flintic Stone *733 Co. v Mayor, Aldermen & Commonalty of City of N. Y., 160 NY 72.)
Even if the facts were otherwise and the Joint Venture had some input in the route selection, it would have no liability to the Utilities. The ultimate responsibility for route selection rested with the City, and just as the City had no duty owing to the Utilities (see Weiss v Fote, 7 NY2d 579, supra; Uppington v City of New York, 165 NY 222, supra; Necaro Co. v Eighth Ave. R.R. Co., 220 App Div 144, supra; Western Union Tel. Co. v Electric Light & Power Co. of Syracuse, 178 NY 325, supra) neither did the contractors and City employees, whose reports were taken into account by the City in selection of the route.
With respect to the claimed negligence of the Joint Venture in the construction of the sewer (and the court does not pass on whether or not there was any negligence), the plaintiffs, having removed their facilities as required, prior to commencement of construction, became “strangers” to any negligence, if there be any, of the Joint Venture. They claim no damage to their property in the course of removal of their facilities.
Unforeseen circumstances requiring a second removal do not change the basic common-law rule that utilities are required to move their facilities at their own expense to make way for public improvements.
While the court recognizes the hardship involved where such circumstances necessitate a change in the route of the sewer, involving additional expenses for the Utilities, the relief they seek must come from the Legislature or from the municipal authorities and not from the court. (See New York City Tunnel Auth. v Consolidated Edison Co. of N.Y., supra, at pp 476-477; Transit Comm. v Long Is. R.R. Co., supra, at pp 354-355; Matter of Consolidated Edison Co. of N. Y. v Lindsay, supra, at p 319.)
The Legislature has in fact, under circumstances not here applicable, provided for reimbursement to utility companies for the relocation of its properties (see Administrative Code, §D15-6.0, subd b; Public Authorities Law, § 359, subd 3).
Additionally, on occasion, local authorities by contract have required the contractor to bear the cost of protecting *734 or relocating the utilities’ facilities. (See Lizza Inds. v Long Is. Light. Co., 44 AD2d 681; New York Tel. Co. v Secord Bros., 62 Misc 2d 866, affd 35 AD2d 779.) However, the contract in the instant case contains no such provision.
The court finds no merit as to the plaintiffs’ other causes of action.
Plaintiffs’ claims, based on “intentional misrepresentation” and “unjust enrichment” are frivolous. Their claims based upon “deprivation of property without just compensation” and “denial of equal protection” have been rejected by the courts of this State on numerous prior occasions. (See Matter of Consolidated Edison Co. of N. Y. v Lindsay, supra; New York Tel. Co. v City of Binghamton, supra.)

. In 1965, New York State in keeping with its long and proud tradition of preserving its resources, pioneered, with the initiation of the “Pure Waters Program”, a commitment far beyond any in-the country, in providing State assistance for abatement of municipal water pollution. (See L 1972, ch 659, § 1.)

. (See examination before trial of Martin J. Gelfand, dated Nov. 10,1980, at p 39.)