NEW YORK TELEPHONE COMPANY et al., Appellants, v CITY OF NEW YORK, Defendant and Third-Party Plaintiff-Respondent, and FRANK MASCALI CONSTRUCTION CORP. et al., a Joint Venture, Respondents. DONALD E. HERNLY et al., Third-Party Defendants-Respondents.

Second Department, August 22, 1983

## APPEARANCES OF COUNSEL

*Harold S. Levy* (*Lewis Trippett* of counsel), for New York Telephone Company, appellant.

*Ernest J. Williams* (*Joseph J. Klem* and *Sheila Solomon Rosenrauch* of counsel), for Consolidated Edison Company of New York, Inc., appellant.

*Cullen & Dykman* (*Cynthia Boyer Okrent* of counsel), for Brooklyn Union Gas Company, appellant.

*Frederick A.O. Schwarz, Jr., Corporation Counsel* (*Francis F. Caputo* and *Trudi Mara Schleifer* of counsel), for defendant and third-party plaintiff-respondent.

*Goetz & Fitzpatrick, P. C.* (*Gerald E. Fitzpatrick* of counsel), for respondents.

*Hart & Hume* (*Lester Esterman* and *Jack Babchik* of counsel), for Andrews & Clark, third-party defendant-respondent.

OPINION OF THE COURT

NIEHOFF, J.

As part of its pollution control efforts, the City of New York undertook to construct a sewer in Brooklyn, and employed three contractors (the joint venture)·to build it. Before construction began, the New York Telephone Company, the Consolidated Edison Company of New York, Inc., and the Brooklyn Union Gas Company were directed to remove their underground facilities from a certain portion of Van Brunt Street in Brooklyn. After they complied, construction of the project commenced on that street. Some time later, a building collapsed adjacent to the project site, and construction was brought to a halt.

Following the accident, the city reassessed the project and, after further review, decided not to continue construction on Van Brunt Street. That decision was based upon the city's unwillingness to undertake the task of underpinning and supporting buildings along that street. Instead, the city chose to reroute the sewer onto Imlay Street and, as a consequence, the utilities were directed to remove their underground facilities from that street. They did so and, in the instant action, they seek to recover the cost of the earlier removal of their facilities from Van Brunt Street. Their complaints against both the city and the joint venture were dismissed (111 Misc 2d 727), and the utilities now appeal.

With respect to the joint venture, dismissal was plainly proper since there was no showing that the joint venture owed a duty to the utilities. However, the remaining and more difficult question is whether the utilities' complaints state a valid cause of action against the city for expenses incurred in the removal of their facilities from Van Brunt Street. We turn to that question.

The gravamen of each of the complaints is that the city, its agents, servants and/or employees acted in a careless, reckless and negligent manner in failing to properly study, examine, investigate and select a site suitable for the installation of a sewer prior to ordering the removal of the utilities' facilities from Van Brunt Street.

It is settled that a utility company must remove its facilities from a public street and relocate them at its own

expense " 'whenever the public health, safety or convenience requires the change to be made' " (*Matter of Consolidated Edison Co. of N.Y. v Lindsay,* 24 NY2d 309, 316, quoting *Transit Comm. v Long Is. R.R. Co.,* 253 NY 345, 351, 352; see, also, *Rochester Tel. Corp. v Village of Fairport,* 84 AD2d 455, 456 [SIMONS, J.]). Moreover, the statute under which the removal was ordered provides that, whenever a sewer is to be constructed in any street in which a utility's facilities are laid, the contractors must give notice to the utility and, having received such notice, the utility "shall * * * remove or otherwise protect and replace their pipes, mains and conduits, and all fixtures and appliances connected therewith and attached thereto, where necessary, under the direction of the commissioner" (Administrative Code of City of New York, § 683a4-17.0, subd b). Thus, a utility must remove its facilities at its own expense where such removal is necessary to permit construction which has as its purpose the advancement of the public health, safety or convenience. In contrast, where removal is requested, for example, merely to provide "an amenity for beautification of a single-family residential area of the community", the utility is entitled to compensation (see *Rochester Tel. Corp. v Village of Fairport, supra,* p 459).

In the case at bar, it is undisputed that the sewer project was properly undertaken in furtherance of the public health, safety and convenience. Moreover, it is clear that removal of the utilities' underground facilities was necessary to permit the construction of the sewer project to proceed as originally planned. Nevertheless, the utilities claim that they are entitled to compensation essentially because, in making the initial selection of Van Brunt Street as the construction site, the city acted negligently. While we are unwilling to hold that the city has no obligation whatsoever to the utilities and that there are no circumstances under which the city can be liable when it orders a relocation of utilities' facilities, we decline to adopt the ordinary negligence standard proposed in the utilities' complaints.

The utilities rely on several cases which permit recovery in negligence against a municipality upon proof that it adopted a plan or design which either was evolved without

adequate study or which lacked a reasonable basis. However, those cases are distinguishable for they involved injury to plaintiffs who were strangers to the projects and had no connection with the municipality (see, e.g., *Weiss v Fote,* 7 NY2d 579 [plaintiff injured in car accident at intersection controlled by lights designed by municipality]; *Gutelle v City of New York,* 55 NY2d 794 [plaintiff injured in car accident when vehicle struck abutment maintained by city]; *Sipala v Town of Huntington,* 20 AD2d 559, affd 15 NY2d 868 [plaintiff was land owner whose property was flooded allegedly as a result of negligently designed and constructed sump]; *Zalewski v State of New York,* 53 AD2d 781 [plaintiff injured when car in which she was riding crashed into bridge railing and then plunged into river]). In contrast, the utilities here were the beneficiaries of a privilege to use the area beneath the street upon the condition, imposed both by statute and common law, that they would relocate those facilities whenever the city so directed (see, e.g., *Brooklyn Union Gas Co. v City of New York,* 37 AD2d 603, 604). As the Court of Appeals observed in *Matter of Consolidated Edison Co. of N.Y. v Lindsay* (24 NY2d 309, 318, *supra*): "It should be emphasized that the city is not attempting to *appropriate* Con Ed's pipes and mains to its own use but is simply compelling the utility company to relocate them. Certainly, the city should not be required to recompense the company for the loss of a privilege which it obtained without paying the city a penny for its use * * * Certainly the company has no vested property right to the use of any particular street but must assume the risk of having to relocate as part of its general right to use the streets."

The utilities do not dispute that they are obligated to remove their facilities without compensation when directed to do so. They contend, however, that the city and its agents owe them a duty not to make such a direction negligently. In our view, the adoption of an ordinary negligence standard in these circumstances would be contrary to sound public policy, for as the Court of Appeals has observed in a slightly different context: "The imposition of such liability, in addition to posing a crushing financial burden, might well discourage municipalities from undertaking activities to promote the general welfare. It could

also impede municipal officials from allocating resources where they would most benefit the public, by making the prime concern the avoidance of tort liability rather than the promotion of the public welfare" (*O'Connor v City of New York,* 58 NY2d 184, 191).

When a municipality directs a utility to relocate its facilities, it does so in the exercise of its governmental function and general police power (see, e.g., *New Rochelle Water Co. v State of New York,* 10 NY2d 287; *New York Tel. Co. v City of Binghamton,* 18 NY2d 152; *Rochester Tel. Corp. v Village of Fairport,* 84 AD2d 455, *supra*). In upholding a State's order compelling a railroad to reconstruct its roads and bridges without compensation to permit drainage improvements across the railroad's right of way, the Supreme Court of the United States pointedly observed: "In view of the obligations assumed by the respective companies when they accepted their franchises at the hands of the State, it is very clear that the State may exercise its police power * * * without making compensation to the companies for the inconvenience and expense to which they are thereby subjected, *unless, indeed, it be made to appear that the power is being exerted arbitrarily, or wantonly,* or for private as distinguished from public benefit, or otherwise in disregard of the fundamental rights of the companies concerned, in either of which cases there would be an abuse rather than an exercise of the power, and the project could not lawfully be carried out against their opposition, with or without compensation" (*Lake Shore & Mich. So. Ry. Co. v Clough,* 242 US 375, 382; emphasis added).

We agree with this approach and therefore hold that a utility may not recover expenses incurred as a consequence of the removal of its facilities which removal ultimately proves unnecessary due to the ordinary negligence of the municipality. Instead, it must be shown, as the Supreme Court has said, that the municipality's directive to relocate was issued arbitrarily or wantonly in which case there would be an abuse rather than an exercise of the city's power to order a relocation. This standard, as opposed to one of ordinary negligence, would, in our view, more closely be in keeping with the long-standing rule that

"[l]awfully authorized planning by governmental bodies has a unique character deserving of special treatment as regards the extent to which it may give rise to tort liability" (*Weiss v Fote,* 7 NY2d 579, 585, *supra*).

In the instant case, our reading of the complaints leads us to conclude that the utilities framed those complaints in accordance with an ordinary negligence standard. Accordingly, in addition to affirming the dismissal as against the joint venture, we affirm that portion of the order which dismissed the utilities' complaints as against the city for failure to state a cause of action, but we modify by granting the utilities leave to replead against the city consistent with the standard discussed herein.

MOLLEN, P. J., GIBBONS and BRACKEN, JJ., concur.

Judgment modified, by adding to the second decretal paragraph thereof after the words "Brooklyn Union Gas Company," the words "with leave, if they be so advised, to replead against the defendant City of New York". As so modified, judgment affirmed, without costs or disbursements. The plaintiffs' time to serve their amended complaints, if they be so advised, is extended until 30 days after service upon them of a copy of the order to be made hereon, with notice of entry.