**The MOUNTAIN STATES TELEPHONE AND TELEGRAPH COMPANY, a Colorado corporation, Plaintiff-Appellant,**

v.

**The CITY AND COUNTY OF DENVER; the Department of Public Works and Division of Wastewater Management Thereof, Defendants-Appellees.**

No. 85CA0006.

Colorado Court of Appeals,
Div. II.

April 17, 1986.

Rehearing Denied May 15, 1986.

Certiorari Granted (City) Sept. 29, 1986.

Bruce G. Smith, Denver, for plaintiff-appellant.

Stephen H. Kaplan, City Atty., George J. Cerrone, Jr., Andrew L. Weber, Asst. City Attys., Denver, for defendants-appellees.

STERNBERG, Judge.

Plaintiff, Mountain States Telephone and Telegraph Company (MSTTC), appeals from an order granting summary judgment in favor of defendant, City and County of Denver (Denver). We reverse.

MSTTC, a Colorado corporation, is in the business of providing telephone service across Colorado. It operates as a public utility regulated by the Public Utilities Commission. The Denver Department of Public Works (Department) was established by the City Charter and is vested with "supervision and control of all streets, alleys, highways, thoroughfares, sewers, bridges, viaducts, tunnels, and other light structures wherever located ..." in Denver. The Wastewater Management Division of the Department (Division) was established pursuant to authority granted the manager of public works to control the carriage, treatment, and disposal of wastewater within Denver. The Division is entirely self-sustaining in the sense that it has no access to general tax revenues, and its activities and obligations, including payment to investors of interest on revenue bonds issued to finance them, are funded primarily by fees and service charges paid by users of the facilities under its control.

In 1973 and 1976, MSTTC constructed telephone transmission facilities under and along East 56th Avenue between Chambers Road and Tower Road. Though not a state highway, this road is a public right-of-way that lies partly within Denver County and partly within Adams County. In 1973, Denver entered into an agreement with a private developer for annexation of a subdivision located in this general area.

Rules and regulations enacted pursuant to the Denver Subdivision Ordinance provided in pertinent part that:

*"The developer is responsible for the costs of utility relocation for street improvement or modifications caused by or for the benefit of the development project.*

. . . .

"All mainline storm and sanitary sewer system construction shall be inspected and tested by the Waste Water Management Division.... *The owner or developer shall agree to pay all costs* incident to the inspection, material testing, and street and alley repair connected with work performed." (emphasis supplied)

"Rules and Regulations Governing Sewerage Charges and Fees and Management of Waste Waters" provided in pertinent part that:

"All costs and expenses incident to the installation and connection of any sewer or other works for which a permit has been issued *shall be borne by the owner.*

. . . .

"Sewer service may be made available by the extension of the City sewerage system to provide a sewer adjacent to the property to be served.... If immediate service is desired, the costs of the extension of the City sewer *shall be borne by the person or persons requesting the extension....*" (emphasis supplied)

The annexation agreement in question, however, required Denver to extend sanitary sewer facilities to serve the subdivision at no cost to the developer.

In 1981, the Division began road excavation and sewer construction operations which required relocation of facilities previously installed by MSTTC. Relocation was requested by the director of the Division on the behalf of the Department. MSTTC took the position that it would resist relocation unless assured of reimbursement for its costs in doing so. The Department informed MSTTC that construction would proceed as planned. It was agreed that MSTTC would relocate in order to avoid damage to its facilities and interruptions in service, while the parties would preserve for judicial determination the issue of reimbursement.

Denver continued to refuse to reimburse MSTTC and this litigation ensued. MSTTC alleged relocation costs of $20,925.90. Some of this expense arose in connection with construction of new telephone lines along the Adams County portion of the right-of-way. As completed, the sewer line serves nearby areas of Adams County.

The case was presented to the court largely as stipulated facts and each party moved for summary judgment. The trial court granted Denver's motion and MSTTC appeals.

In asserting the correctness of the trial court's ruling, Denver relies on the common law rule that a utility forced to relocate from a public right-of-way as a consequence of reasonable acts of municipal regulation, must do so at its own expense. In support of this argument it cites *Norfolk Redevelopment Housing Authority v. Chesapeake & Potomac Telephone Co.,* 464 U.S. 30, 104 S.Ct. 304, 78 L.Ed.2d 29 (1983); and E. McQuillen, *Municipal Corporations,* §§ 24.565, 24.588, 30.39, and 34.74(a) (3d ed. 1970).

MSTTC, however, urges us to adopt an exception to this common law rule which places the cost of relocation on the municipality "where the relocation of [a utility's] facilities has been necessitated by the municipality's exercise of a proprietary rather than a governmental function or purpose." 12 E. McQuillen, *supra,* § 34.74(a). It contends, and we agree, that *Norfolk Redevelopment, supra,* is inapposite here because the actions complained of therein were not proprietary in nature.

■ MSTTC relies on the principle, long recognized in Colorado, that a municipality possesses two classes of powers and functions: (1) those that are termed public and governmental because they relate primarily to matters of statewide concern; and (2) those that are termed private and proprietary because they relate primarily to matters of local advantage. *See City of Denver v. Hubbard,* 17 Colo.App. 346, 68 P. 993 (1902); 2 E. McQuillen, *supra,* §§ 4.78, 4.79.

MSTTC recognizes that municipalities generally may require relocation of utility facilities when necessitated by improvements directly related to the public interest

in safe and convenient use of streets because such activities are governmental in nature. It contends, however, that the construction involved here was not of this variety because it was undertaken for the sole purpose of providing sewer service pursuant to the annexation agreement and because the sewer as constructed serves not only Denver, but also portions of Adams County. Citing *City of Northglenn v. City of Thornton*, 193 Colo. 536, 569 P.2d 319 (1977) and *County of Larimer v. City of Fort Collins*, 68 Colo. 364, 189 P. 929 (1920), MSTTC contends that it is well-established in Colorado that water and sewer facilities are proprietary in nature. Further, citing *Colorado Open Space Council, Inc. v. City & County of Denver*, 190 Colo. 122, 543 P.2d 1258 (1975) and *City of Fort Collins v. Park View Pipe Line*, 139 Colo. 119, 336 P.2d 716 (1959), it contends that a municipality that undertakes to provide any utility service to areas outside its municipal limits does so in its proprietary capacity.

Denver responds that in the circumstances of this case it would be inappropriate to apply the governmental/proprietary distinction because, under *Clark v. Town of Estes Park*, 686 P.2d 777 (Colo.1984), the distinction is generally disapproved as a ground of decision outside the law of torts. Thus, it contends that *Clark* abrogated the validity of the body of law upon which MSTTC relies. Denver further contends that even if *Clark* does not control, it is inappropriate to conclude that the sewer construction herein is a proprietary activity because it was undertaken as a mere incident to an annexation agreement, and annexation is uncontrovertedly governmental in nature.

We conclude that *Clark v. Town of Estes Park*, *supra*, does not invalidate application here of the legal and equitable principles underlying the law of the govermental/proprietary distinction and that, in light of that distinction, MSTTC is entitled to recover the costs necessarily incurred here as a result of relocation of its facilities.

## I.

In *Clark v. Town of Estes Park, supra,* property owners sought to enjoin construction of a parking lot by the town. Estes Park zoning ordinances did not permit operation of a parking lot on the property at issue. The trial court concluded that the town was not bound by its zoning ordinances because parking was integral to highway uses and regulation, and provision of parking facilities, therefore, constituted a governmental function.

In a footnote to its opinion, the supreme court criticized the imprecision of the governmental/proprietary distinction in general terms. The holding of *Clark* is, however, carefully limited to the zoning context: "We conclude that the governmental/proprietary distinction does not provide a fair or predictable means of determining when a municipality must obey its zoning ordinances and [we] do not apply it in the municipal zoning context." *Clark v. Town of Estes Park, supra.* In reaching this conclusion, the court relied exclusively upon zoning cases. Further, other authority relied upon, to the extent that it deals generally with the distinction, addresses its use by courts, rather than its content, and emphasizes the goals of fairness and predictability that were determinative for the Supreme Court in *Clark. See* Note, *Governmental Immunity From Local Zoning Ordinances*, 84 Harv. L. Rev. 869 (1971) (criticizing reliance on "mechanical application of convenient labels"; urging "reasoned balancing of ... competing public and private interests [that are] essential to an equitable resolution of conflicts" and establishment of sound precedent.)

Thus, we conclude that, except in the zoning context, *Clark* does not preclude application of the law of the governmental/proprietary distinction. However, we do understand *Clark* as a limitation upon the bare precedential value of cases that turn on the distinction and as an endorsement of an analysis based upon consideration of the equities of a dispute, the nature of the interests in conflict, and the policies

served by the governmental/proprietary distinction.

## II.

■■ Here, the precise activity complained of is not operation or maintenance, but construction, of a sanitary sewer line. This construction required excavation of a public street, but the excavation had nothing to do with the public interest in safe and convenient use thereof; rather, Denver was obligated pursuant to its contract with the developer to provide sewer service to an annexed area.

Further, the construction was performed by an agency of the municipality which functions like a business in that it is funded, independently of state or municipal tax revenues, by fees charged its private customers and money invested by private bond holders seeking a return from the profits arising from its operations. It is significant to us that construction was promised at no cost to the developer in spite of the general policy of the municipality, stated as regulations promulgated pursuant to ordinance, which requires developers to bear the costs of sewer construction: The strong implication is that the parties to the annexation agreement actively contemplated allocation of these costs and that this financial burden constituted a bargained-for element of their contract.

The basis of the governmental/proprietary distinction is the recognition that when municipalities act to gain specific economic advantage at the expense of private interests, they should not receive the insulating benefit of governmental immunity with respect to otherwise actionable activities. We are not persuaded, therefore, by the argument that because construction of the sewer was incidental to an act of annexation, unquestionably a governmental function in itself, Denver and the Division may justifiably ignore their own ordinances, rules, and regulations to provide a benefit to one private interest at the expense of another. This is especially true where, as here, the private interest adversely affected is itself a public utility which has been given the right and corresponding duty of providing integrated statewide telephone service, a grant which recognizes a public interest of a character generally superior to the interest of municipalities in local control. *See Englewood v. Mountain States Telephone & Telegraph Co.*, 163 Colo. 400, 431 P.2d 40 (1967).

In this perspective, then, Denver here seeks to use the power of government to compel MSTTC to provide, free of charge, a service in furtherance of a transaction that has all the earmarks of a business enterprise. Denver would pass on to MSTTC customers all over Colorado costs which arise from the provision of benefits to residents of a relatively small area, some of them outside Denver's municipal limits, and which were allocated by a contract to which MSTTC was not a party.

In light of all these factors—Denver's actions in contradiction to its stated policies, the proprietary character of the entire transaction, and the statewide interest in uniform telephone service as compared with the much more local benefit arising from sewer construction—we conclude that it is neither fair nor reasonable to require MSTTC to bear the costs of relocating its facilities. However, we note that the record indicates that at least some of the costs claimed as damages by MSTTC may be attributable not to relocation per se, but to construction of entirely new facilities. It will be necessary therefore to determine what proportion of the amount claimed is properly recoverable by MSTTC.

We do not reach other contentions raised by the parties.

Accordingly, the judgment is reversed, and the cause is remanded for further proceedings in accordance with this opinion.

SMITH and BABCOCK, JJ., concur.