The CITY AND COUNTY OF DENVER; The Department of Public Works and Division of Wastewater Management Thereof, Petitioners,

v.

The MOUNTAIN STATES TELEPHONE AND TELEGRAPH COMPANY, a Colorado corporation, Respondent.

No. 86SC203.

Supreme Court of Colorado, En Banc.

May 23, 1988.

Stephen H. Kaplan, City Atty., Andrew, L. Weber, George J. Cerrone, Jr., Asst. City Attys., Denver, for petitioners.

Bruce G. Smith, Linnea M. Simons, Denver, for respondent.

Hayes & Phillips, P.C., Herbert C. Phillips, Victoria M. Bunsen, Denver, for amicus curiae Cities of Northglenn and Federal Heights.

Gerald E. Dahl, Denver, for amicus curiae Colorado Mun. League.

VOLLACK, Justice.

The City and County of Denver (Denver) appeals from *Mountain States Tel. & Tel. Co. v. City & County of Denver*, 725 P.2d 52 (Colo.App.1986), in which the Colorado Court of Appeals reversed the judgment of the Denver District Court granting summary judgment in favor of Denver. We reverse the judgment of the court of appeals.

I.

The facts are not in dispute. In 1981, the Wastewater Management Division (Division) of the Denver Department of Public

Works commenced construction of a sanitary sewer line beneath East 56th Avenue between Chambers Road and Towers Road as part of a 1973 annexation agreement between Denver and a private developer of the Green Valley Ranch subdivision. East 56th Avenue is a public right-of-way that lies partially within the City and County of Denver and partially within Adams County. This construction required Mountain States Telephone and Telegraph Company (Mountain Bell) to relocate underground telephone facilities it had installed in 1973 and 1976. Although Denver regulations and the Division's practice require private developers to bear all costs of construction incident to extending sewer facilities to a subdivision, Denver agreed to construct the new sewer facilities at no cost to the developer.

Mountain Bell filed a civil suit against Denver in Denver District Court, claiming that Denver owed Mountain Bell $20,925.90 as the cost of relocating its buried telephone lines. Both Mountain Bell and Denver moved for summary judgment. Denver relied on the common law rule that a utility forced to relocate from a public right-of-way as a consequence of reasonable acts of municipal regulation must do so at its own expense.[1] Mountain Bell relied on the so-called "governmental/proprietary distinction" as an exception to the common law rule which, in the context of utility relocation law, places the cost of relocation on the municipality whenever the municipality acts in its proprietary rather than governmental capacity. The trial court granted summary judgment in favor of Denver. Mountain Bell appealed.

The court of appeals reversed the judgment of the district court in *Mountain States Tel. & Tel. Co. v. City & County of Denver*, 725 P.2d 52 (Colo.App.1986). It observed that Colorado has recognized the governmental/proprietary distinction in

many contexts, and recited a number of cases that held that providing water and sewer facilities is an exercise of a municipality's proprietary capacity. It recognized that the governmental/proprietary distinction was criticized in *Clark v. Town of Estes Park*, 686 P.2d 777, 779 (Colo.1984), and *Norfolk Redev. & Hous. Auth. v. Chesapeake & Potomac Tel. Co.*, 464 U.S. 30, 104 S.Ct. 304, 78 L.Ed.2d 29 (1983), but found that the holding of *Clark* was limited to the municipal zoning context and *Norfolk* was not dispositive of the issue because it concerned statutory abrogation of the common law rule rather than the governmental/proprietary distinction. Based on the Division's decision to bear the cost of installing a water and sewer line despite regulations to the contrary, the "proprietary character" of the 1973 transaction between Denver and the developer, and the burden imposed on statewide telephone service which benefited only those in a small area, the court of appeals held that requiring Mountain Bell to bear the cost of relocating its facilities would be "neither fair nor reasonable." *Mountain States*, 725 P.2d at 56.

## II.

The governmental/proprietary distinction "is neither a single nor a simple rule. Rather, it is a cluster of rules that courts use in diverse contexts for a variety of purposes." Wells and Hellerstein, *The Governmental–Proprietary Distinction in Constitutional Law*, 66 Va.L.Rev. 1073, 1075 (1980). Its origins can be traced to tort law as an exception to the harsh doctrine of sovereign immunity. *See* W. Prosser & W. Keeton, *Prosser and Keeton on the Law of Torts* § 131, at 1039–40, 1053–54 (5th ed. 1984). The distinction has been imported into many other legal contexts, often with less than satisfying results.

---

1. Under the traditional common-law rule, utilities have been required to bear the entire cost of relocating from a public right-of-way whenever requested to do so by state or local authorities. 12 E. McQuillin, Law of Municipal Corporations § 34.74a (3d ed. 1970); 4A J. Sackman, Nichols' Law of Eminent Domain § 15.22 (rev. 3d ed. 1981). This rule was

recognized and approved by this Court as long ago as *New Orleans Gas Light Co. v. Drainage Comm'n of New Orleans*, 197 U.S. 453, 462 [25 S.Ct. 471, 474, 49 L.Ed. 831] (1905). *Norfolk Redev. & Hous. Auth. v. Chesapeake & Potomac Tel. Co.*, 464 U.S. 30, 35, 104 S.Ct. 304, 307, 78 L.Ed.2d 29 (1983) (citation omitted).

Cases [2] and commentators [3] have criticized the governmental/proprietary distinction as unhelpful, inherently unsound, and "probably one of the most unsatisfactory known to the law, for it has caused confusion not only among the various jurisdictions but almost always within each jurisdiction." [4] The distinction nevertheless retains its vitality in a number of states and a variety of contexts.[5] Our cases have criticized the governmental/proprietary distinction in the context of municipal employee negligence, *Evans v. Board of County Comm'rs*, 174 Colo. 97, 100–01, 482 P.2d 968, 969–70 (1971), and municipal zoning ordinances, *Clark v. Town of Estes Park*, 686 P.2d 777, 779 (Colo.1984), while recognizing the distinction in other contexts, *see City of Northglenn v. City of Thornton*, 193 Colo. 536, 569 P.2d 319 (1977); *County of Larimer v. City of Ft. Collins*, 68 Colo. 364, 189 P. 929 (1920).

In those jurisdictions which continue to recognize the governmental/proprietary distinction in the context of utilities reloca-

---

**2.** *See Indian Towing Co. v. United States*, 350 U.S. 61, 65, 76 S.Ct. 122, 124, 100 L.Ed. 48 (1955) (describing the governmental/proprietary distinction as a "quagmire that has long plagued the law of municipal corporations" and "inherently unsound"); *Pacific Tel. & Tel. Co. v. Redevelopment Agency of City of Redlands*, 75 Cal.App.3d 957, 968, 142 Cal.Rptr. 584, 591 (1977) ("The labels 'governmental function' and 'proprietary function' are of dubious value in any context."); *Clark v. Town of Estes Park*, 686 P.2d 777, 779 (Colo.1984) (The governmental/proprietary distinction "is often an arbitrary and unpredictable means of resolving disputes."); *New York Tel. Co. v. City of Binghamton*, 18 N.Y.2d 152, 159, 219 N.E.2d 184, 186, 272 N.Y.S.2d 359, 361 (1966) ("The distinction between 'governmental function' and 'proprietary function' is a sort of abstraction difficult to make meaningful in a day when municipalities continually find new ways to exercise police power in their efforts to cope with the pressing needs of their citizens."); *Northwest Natural Gas Co. v. City of Portland*, 300 Or. 291, 297, 302, 711 P.2d 119, 123, 126 (1985) ("The governmental/proprietary distinction has led a less than tranquil life" and is "unworkable, untenable and unhelpful in deciding mass transit/utility relocation cases.").

In *Washington Township v. Ridgewood Village*, 26 N.J. 578, 141 A.2d 308 (1958), the New Jersey Supreme Court found the distinction between governmental and proprietary functions to be

illusory; whatever local government is authorized to do constitutes a function of government, and when a municipality acts pursuant to granted authority it acts as government and not as a private entrepreneur. The distinction had proved useful to restrain the ancient concept of municipal tort immunity, not because of any logic in the distinction, but rather because sound policy dictated that governmental immunity should not envelop the many activities which government today pursues to meet the needs of the citizens.

26 N.J. at 584, 141 A.2d at 311.

**3.** *See* Barnett, *The Foundations of the Distinction Between Public and Private Functions in Respect to the Common-law Tort Liability of Municipal Corporation*, 16 Or.L.Rev. 250, 250 (1937) (distinction "originated chiefly in a combination of misguided logic and misapplied precedent"); Davis, *Tort Liability of Governmental Units*, 40 Minn.L.Rev. 751, 779 (1956) ("nothing short of complete excision of the governmental-proprietary distinction from the law can be wholly satisfactory"); Seasongood, *Municipal Corporations: Objections to the Governmental or Proprietary Test*, 22 Va.U.L.Rev. 910, 938 (1936) (rules concerning the distinction "are as logical as those governing irregular French verbs"). *See also Northwest Natural Gas Co. v. City of Portland*, 300 Or. 291, 297 n. 5, 711 P.2d 119, 123 n. 5 (1985) (listing other scholarly comment on the subject).

**4.** 3 K. Davis, *Administrative Law Treatise* § 25.07, at 460 (1958).

**5.** *See* J. Banks, *Colorado Law of Cities and Counties*, §§ 2.8, 15.2 (3d ed. 1981); Wells and Hellerstein, *The Governmental–Proprietary Distinction in Constitutional Law*, 66 Va.L.Rev. 1073, 1073 (1980) (the distinction "clings stubbornly to life"); *see also City of Baltimore v. Baltimore Gas & Elec. Co.*, 232 Md. 123, 137–38, 192 A.2d 87, 94–95 (1963) (municipality may not require utilities to relocate at their own cost when exercising proprietary function); *City of Pontiac v. Consumers Power Co.*, 101 Mich.App. 450, 453, 300 N.W.2d 594, 596 (1980) (cost of relocation of electric lines must be borne by city when relocation necessitated by construction and renovation of public hospital); *State ex rel. Speeth v. Carney*, 163 Ohio St. 159, 178, 126 N.E.2d 449, 460 (1955) ("A governmental subdivision in the exercise of its proprietary capacity is in the same position as a private utility attempting to force such relocation."). *But see Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 538–47, 105 S.Ct. 1005, 1010–15, 83 L.Ed.2d 1016 (1985) (rejecting the governmental/proprietary distinction in the context of regulatory immunity under the commerce clause); *New York v. United States*, 326 U.S. 572, 583–84, 66 S.Ct. 310, 314–15, 90 L.Ed. 326 (1946) (rejecting the distinction in the context of intergovernmental tax immunity).

tion law, the results are mixed and perhaps chaotic. *See Northwest Natural Gas,* 300 Or. at 298, 711 P.2d at 124; Van Alstyne, *Governmental Tort Liability: A Public Policy Prospectus,* 10 UCLA L.Rev. 463, 500–02 (1963). Most but not all jurisdictions hold that utilities must relocate at their own expense when a municipality exercises its authority to repair, regrade, or realign its streets,[6] redevelop an urban area,[7] construct a mass transit system,[8] or install a water and sewer system.[9]

■ We rejected the governmental/proprietary distinction in the municipal zoning context because it did not provide a fair or predictable means of determining which municipal functions are governmental and which functions are proprietary. *Clark,* 686 P.2d at 779. This problem is also present in the utilities relocation context. *Compare Michigan Bell Tel. Co.,* 106 Mich.App. at 696, 308 N.W.2d at 611 (sewer construction is governmental) *with Southern Union Gas Co.,* 81 N.M. at 657, 472 P.2d at 371 (water and sewer construction is proprietary). In addition to being an unreliable means of distinguishing exercises of municipal authority, the governmental/proprietary distinction is analytically unsound because it assumes that functions which were once relegated to the private sector could not later be undertaken by municipalities in support of the health,

safety and welfare of its citizens. As the United States Supreme Court recognized in *Helvering v. Gerhardt,* 304 U.S. 405, 427, 58 S.Ct. 969, 978, 82 L.Ed. 1427 (1938) (Black, J., concurring) and reiterated in *Garcia v. San Antonio Metro. Transit Auth.,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1984), any rule that turns on a judicial appraisal of whether a particular function traditionally falls into the "proprietary" or "governmental" category "leads to inconsistent results at the same time that it disserves principles of democratic self-governance, and it breeds inconsistency precisely because it is divorced from those principles." *Garcia,* 469 U.S. at 546–47, 105 S.Ct. at 1015. This is so because

[m]any governmental functions of today have at some time in the past been non-governmental. The genius of our government provides that, within the sphere of constitutional action, the people—acting not through the courts but through their elected legislative representatives—have the power to determine as conditions demand, what services and functions the public welfare requires.

*Helvering v. Gerhardt,* 304 U.S. 405, 427, 58 S.Ct. 969, 978, 82 L.Ed. 1427 (1938) (Black, J., concurring). *See also Washington Township v. Ridgewood Village,* 26 N.J. 578, 584, 141 A.2d 308, 311 (1958)

6. *Norfolk Redev. & Hous. Auth. v. Chesapeake & Potomac Tel. Co.,* 464 U.S. 30, 104 S.Ct. 304, 78 L.Ed.2d 29 (1983); *Mountain States Tel. & Tel. Co. v. Horn Tower Constr. Co.,* 147 Colo. 166, 363 P.2d 175 (1961); *Moffat v. City & County of Denver,* 57 Colo. 473, 477–78, 143 P. 577, 578 (1914).

7. *See Pacific Tel. & Tel. Co. v. Redevelopment Agency of City of Glendale,* 87 Cal.App.3d 296, 151 Cal.Rptr. 68 (1978); *Pacific Tel. & Tel. Co. v. Redevelopment Agency of City of Redlands,* 75 Cal.App.3d 957, 967, 142 Cal.Rptr. 584, 591 (1977); *Mountain States Tel. & Tel. Co. v. Boise Redev. Agency,* 101 Idaho 30, 36, 607 P.2d 1084, 1090 (1980); *Central Maine Power Co. v. Waterville Urban Renewal Auth.,* 281 A.2d 233 (Me. 1971); *Metropolitan Dev. & Hous. Agency v. South Cent. Bell Tel. Co.,* 562 S.W.2d 438, 445 (Tenn.App.1978).

8. *Peoples Gas Light & Coke Co. v. City of Chicago,* 413 Ill. 457, 469, 109 N.E.2d 777, 784 (1952); *Detroit Edison Co. v. Southeastern Mich. Transp.*

*Auth.,* 161 Mich.App. 28, 30, 410 N.W.2d 295, 297 (1987), *cert. granted* (Mich. Dec. 22, 1987).

9. *Southern Cal. Gas Co. v. City of Los Angeles,* 50 Cal.2d 713, 716–17, 329 P.2d 289, 290–91 (1958) (laying of sewers); *State Highway Dep't v. Roberts,* 42 Del.Ch. 486, 490, 215 A.2d 250, 253 (1965) (sewer and drainage construction); *Village of Oak Lawn v. Commonwealth Edison Co.,* 163 Ill.App.3d 457, 458, 114 Ill.Dec. 598, 599, 516 N.E.2d 753, 754 (1987) (sewer construction outside of township limits); *Michigan Bell Tel. Co. v. City of Detroit,* 106 Mich.App. 690, 696, 308 N.W.2d 608, 611 (1981) (sewer construction); *County of Nassau v. South Farmingdale Water Dist.,* 62 A.D.2d 380, 390–91, 405 N.Y.S.2d 742, 747–48, *aff'd,* 46 N.Y.2d 794, 386 N.E.2d 832, 413 N.Y.S.2d 921 (1978) (construction of sewers was once proprietary but is now governmental). *But see Southern Union Gas Co. v. City of Artesia,* 81 N.M. 654, 657, 472 P.2d 368, 371 (1970) (control of water and sewer facilities is proprietary).

("whatever local government is authorized to do constitutes a function of government"). Accordingly, we apply the rationales of *Clark, Helvering,* and *Garcia* to the facts of this case and conclude that in Colorado the governmental/proprietary distinction has no continuing validity in the context of utilities relocation law.

Mountain Bell relies on *City of Northglenn v. City of Thornton,* 193 Colo. 536, 569 P.2d 319 (1977), and *County of Larimer v. City of Ft. Collins,* 68 Colo. 364, 367, 189 P. 929, 930 (1920), for the proposition that operating a water works is an exercise of a municipality's proprietary capacity. There we stated:

> [I]t is well settled that a city in operating a water works system acts in its proprietary or business, and not in its political or governmental capacity, and in so acting is governed largely by the same rules that apply to a private corporation.

*City of Northglenn,* 193 Colo. at 542, 569 P.2d at 323; *County of Larimer,* 68 Colo. at 367, 189 P.2d at 930. It is important to recognize, however, that both *City of Northglenn* and *County of Larimer* arose not only outside of the context of utilities relocation, but also that each case was concerned with the authority of a municipality to serve persons outside of its statutory limits. This places each case on an entirely different footing and renders each inapplicable to this case.

### III.

■ The court of appeals analyzed the problem of which entity should bear the cost of relocating Mountain Bell's facilities by considering the equities of the parties, the nature of the transaction that caused the sewer pipes to be laid and the policies served by the governmental/proprietary distinction. *Mountain States Tel. & Tel. Co. v. City & County of Denver,* 725 P.2d 52, 55–56 (Colo.App.1986). In the absence of a contract, franchise agreement, or statute to the contrary, we believe the better rule is to require a utility to pay the cost of relocating its facilities from a public street whenever the municipality requires it in the exercise of its police power to protect the public health, safety, or convenience.

Many jurisdictions have adopted the approach that "a utility company must remove its facilities from a public street and relocate them at its own expense 'whenever the public health, safety or convenience requires the change to be made.'" *New York Tel. Co. v. City of New York,* 95 A.D.2d 282, 283–84, 466 N.Y.S.2d 56, 57 (1983) (quoting *In re Consol. Edison Co. v. Lindsay,* 24 N.Y.2d 309, 316, 248 N.E.2d 150, 152, 300 N.Y.S.2d 321, 325 (1969)). *See also Michigan Bell Tel. Co. v. City of Detroit,* 106 Mich.App. 690, 695, 308 N.W. 2d 608, 611 (1981) (Right of public utility to use public streets is subordinate to the right of local government to require the utility to relocate its lines and facilities at its own expense "when made necessary by considerations of public health and welfare."). This approach recognizes that the right of a public utility to locate its facilities on or beneath a public right-of-way is impliedly limited by those municipal services which further the health, safety, or welfare of its citizens. In *Mountain States Tel. & Tel. Co. v. Horn Tower Constr. Co.,* 147 Colo. 166, 169, 363 P.2d 175, 177 (1961), and *Moffat v. City & County of Denver,* 57 Colo. 473, 478, 143 P. 577 (1914), we recognized that when utility relocation is necessitated by road improvements, the right of a franchised public utility is subordinate to a municipality's authority to make such changes as the public interest demands. Because some limitation on the right of municipalities to compel a utility to relocate its facilities at its own cost is necessary, and because the governmental/proprietary distinction is no longer cognizable in the utilities relocation context, we hold that a municipality may compel public utilities to relocate their facilities from the public right-of-way at their own cost whenever such relocation is necessitated by the municipality's reasonable exercise of police power to regulate the health, safety, or welfare of its citizens.

■ In this case, relocation of Mountain Bell's facilities would be necessitated by the sewer construction, and sewer construction furthers the health and welfare of Denver's citizens in the newly annexed

development. Accordingly, Mountain Bell must bear the cost of relocating its facilities.

The judgment of the court of appeals is reversed.